**In the Matter of Thomas Joseph KERR, Wanda Sue Kerr, Bankrupts.**

**F. Stannard LENTZ, Trustee, Appellant,**

v.

**BANK OF INDEPENDENCE, Appellee.**

**No. 77–2110.**

United States Court of Appeals,
Tenth Circuit.

May 21, 1979.

F. Stannard Lentz of Hamill, Lentz, Neill & Dwyer, Roeland Park, Kan., for appellant.

There was no appearance for appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal by a trustee in bankruptcy from a district court order affirming a decision of the bankruptcy judge which held the Bank of Independence has a perfected lien on an automobile owned by the bankrupts, Thomas Joseph Kerr and Wanda Sue Kerr.

The sole issue on appeal is whether the bankruptcy judge and the district court properly construed Kansas law, particularly whether 1975 amendments to Kan.Stat. Ann. § 84–9–302(3)(c) should induce us to abandon the rule announced in *Commerce Bank v. Chambers* (*In re Littlejohn*), 519 F.2d 356 (10th Cir. 1975).

The Kerrs borrowed from the Bank of Independence to finance acquisition of a used car from a Kansas automobile dealer. The bank's check was made payable to the Kerrs and the dealer, who delivered to the bankrupts the previous owner's title certificate endorsed on the reverse side, with a notation of the bank's lien. Had this certificate been routinely processed through the county treasurer's office and the Kansas Motor Vehicle Department, the bank's lien would have been duly noted on the certificate of title, and would have been properly perfected under the provisions of Kan.Stat. Ann. § 84–9–302(3)(c) and § 8–135(c)(5). But the borrowers never applied for a Kansas title for the vehicle. In fact it was stipulated they notified the bank they had lost the car title; apparently this notification was sometime between the date of the loan, August 26, 1976, and their adjudication as bankrupts November 15, 1976. They paid only a small amount on the total indebtedness. When they were adjudicated bankrupts the trustee, relying upon his position as an ideal lien creditor under § 70c of the Bankruptcy Act, 11 U.S.C. § 110, asserted that the bank's lien was subordinate and inferior to that of the trustee. The bankruptcy judge and the district court, relying upon *Commerce Bank v. Chambers*, 519 F.2d 356 (10th Cir. 1975), held against the trustee and in favor of the bank on this issue.

The facts in *Commerce Bank* are substantially similar to those involved in the instant case. There we noted it was the responsibility of the purchasers to present the appropriate documents to obtain a new certificate of title in their own names. The transfer process requires presentation of an application for an original certificate of title, a title fee, bill of sale showing the bank's lien, application for registration of

the car, registration fee, proof of payment of personal property taxes, and evidence of tax assessment of the automobile. *Commerce Bank* declared, "We cannot hold that the burden of assembling all of these items is to be placed upon the lienholder Bank." 519 F.2d at 358. Balancing the reasonable expectations of what the lienholder might be expected to do to perfect its lien, and the burdens which had to be placed upon the purchasers themselves in the registration process, we concluded that the lender's lien was perfected under Kansas law as against the trustee in bankruptcy when the lender secured the notation of the lien on the old owner's title certificate being transferred or upon the bill of sale.

All of this is acknowledged by the trustee. His only argument is that the change in the law by which the 1975 Kansas Legislature added an alternative means for lenders on automobiles to perfect a lien during the period between the loan and the issuance of the new title certificate should alter the result. 1975 Kan.Sess.Laws ch. 32, § 2.[1] The changes in the law are discussed in Clark, *The New UCC Article 9 Amendments*, 44 J.K.B.A. 131, 178 (1975) as follows:

> The 1975 legislature made one additional amendment to the UCC which is wholly independent of the uniform amendments. Suppose a consumer buys a new car and finances it through a direct loan from Kansas National Bank. Under prior law, a number of days might pass between delivery of the bill of sale and notation of the bank's lien on the certificate of title. During this interim period, a creditor might levy on the car or the consumer might file a voluntary petition in bankruptcy. Under the UCC, the bank might be deemed to have an unperfected security interest prior to notation of the lien on the title, thus endangering the bank's security interest. In order to protect the bank during this interim, the legislature amended the certificate of title act to provide that the consumer may execute a "notice of security interest" form prepared by the dealer or secured party. This form is mailed to the Motor Vehicle Department with a fee of $1 to insure protection until the title with the lien noted thereon is applied for and issued. The effect is to give the secured party perfection on the vehicle upon mailing or delivery of the "notice of security interest." With this amendment, lenders can breathe a deep sigh of relief. (Footnotes omitted.)

Our conclusion is that while this change was not a legislative attempt to overrule *Commerce Bank v. Chambers*, because it was passed prior to our opinion issued on June 25, 1975, it was in reaction to the problem treated in that case. The legislature perceived a hole in the statutory scheme whereby, contrary to the general philosophy of the UCC, the lender would be dependent upon acts of the borrower to perfect its lien. The legislature took steps to provide a simplified method whereby the lender would not be subject to that risk, if it filed a brief form and paid a nominal fee. Our *Commerce Bank* opinion attempted to deal equitably with the situation under the law as it then existed.

The best remaining argument in favor of the bank's lien would seem to be that ab-

---

1. As pertinent, Kan.Stat.Ann. § 84–9–302(3) now reads:

    (3) A security interest in

    . . . . .

    (c) a vehicle (except a vehicle held as inventory for sale) subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:

    Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, *or by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8–135, and amendments thereto.* Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article. [Emphasis supplied.]

sent fraud the Kerrs could not pass good title to a new purchaser without going through the title registration process where the bank's lien would be recorded. *But cf. In re Dobbins*, 371 F.Supp. 141 (D.Kan.1973) (out of state registration). By contrast, the purpose of the UCC, mentioned above, is to place perfection of security interests solely within the power and prerogative of the creditor. When the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it, if the creditor desires protection against failure of the debtor to register the car in Kansas. Had these amendments been applicable when we decided *Commerce Bank* we would have held the Kansas legislature intended to require the lender to utilize this alternate procedure to create an effective lien in a situation like that at bar. We think that is the proper approach, and therefore we now abandon the rule announced in *Commerce Bank*.

The judgment is reversed and the cause is remanded for proceedings consistent herewith.