**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 20 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re:

ROBERT FRITZ CHARLES;
JAN ALOISE CHARLES,

      Debtors.

—————

J. MICHAEL MORRIS, Trustee,

      Plaintiff - Appellant,

v.

THE CIT GROUP/EQUIPMENT
FINANCING, INC.,

      Defendant - Appellee.

No. 02-3072

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-1375-MLB)**

Submitted on the briefs:

Christopher A. McElgunn of Klenda, Mitchell, Austerman & Zuercher, L.L.C.,
Wichita, Kansas, for Plaintiff-Appellant.

Jack C. Marvin and Van M. Halley of Stinson Morrison Hecker LLP, Wichita,
Kansas, for Defendant-Appellee.

Before **SEYMOUR** , **EBEL** , and **O'BRIEN** , Circuit Judges.

---

**SEYMOUR** , Circuit Judge.

---

J. Michael Morris, bankruptcy trustee (trustee), appeals the district court's order affirming the bankruptcy court's entry of summary judgment in favor of The CIT Group/Equipment Financing, Inc. (CIT) on the trustee's claim to avoid unperfected security interests pursuant to 11 U.S.C. § 544(a).  Our jurisdiction arises under 28 U.S.C. § 158(d).  We affirm. [1]

I

On or about June 26, 1997, the debtor, Robert F. Charles, entered into a "Master Lease Agreement" with CIT that, on its face, gave the debtor leasehold interests in four trucks.  CIT is named as the owner of the trucks on the certificates of title issued by the State of Kansas, and the certificates were duly filed with the appropriate state agency.

In August 2000, the debtor filed bankruptcy.  Thereafter, the trustee commenced an adversary proceeding against CIT under § 544(a) to avoid

---

[1]  After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

allegedly unperfected security interests in the trucks. The trustee claimed that the Master Lease Agreement was a disguised security agreement, and that CIT's security interests in the trucks were not perfected under Kansas law because CIT was not named as a lienholder on the certificates of title. CIT subsequently filed a motion for summary judgment on the trustee's claim.

The bankruptcy court determined that, even if the Master Lease Agreement is a disguised security agreement and not a true lease, the trustee could not avoid CIT's security interests because CIT substantially complied with the perfection requirements for motor vehicles under Kansas law. *Morris v. The CIT Group/Equip. Fin., Inc. (In re Charles)*, 268 B.R. 575, 578 (Bankr. D. Kan. 2001). It therefore granted summary judgment for CIT. The trustee appealed to the district court. After reviewing the perfection issue de novo, the district court affirmed summary judgment in favor of CIT. This appeal followed.

II

"Our review of the bankruptcy court's decision is governed by the same standards of review that govern the district court's review of the bankruptcy court." *Connolly v. Harris Trust Co. of Cal. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quotation omitted). There are no disputed factual issues pertaining to the perfection issue here, and the bankruptcy court resolved the question purely as a matter of law. Our review is therefore de novo. *Id.* Like

-3-

the bankruptcy court, we will assume for purposes of this appeal that the Master Lease Agreement was a disguised security agreement, and that "the debtor acquired an ownership interest in the trucks thereby giving CIT a security interest." *In re Charles*, 268 B.R. at 578.

Section 544(a) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed." *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1532 (10th Cir. 1987). Consequently, "[s]ection 544(a) allows the trustee to avoid any unperfected liens on property belonging to the bankruptcy estate." *Id.* The determination of whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a), is controlled by state law. *Id.* at 1533.

Neither the Kansas Supreme Court nor the Kansas Court of Appeals has addressed the perfection issue raised by this appeal. "In the absence of [Kansas] law directly on point, we attempt to predict how [the Kansas Supreme Court] would rule." *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). "In conducting our inquiry, we are free to consider all resources available, including decisions of [Kansas] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Id.*

Kansas has adopted Article 9 of the Uniform Commercial Code. Under

KAN. STAT. ANN. §§ 84-9-302(3)(c) (1996) and 8-135(c)(2) and (5) (1996),[2] "there are two alternative ways that a secured creditor on a motor vehicle can perfect its security interest: (1) by having its lien noted on the certificate of title which is then duly filed, or (2) by filing a 'notice of security interest' ("NOSI")." *In re Charles*, 268 B.R. at 577; *accord Beneficial Fin. Co. of Kan., Inc. v. Schroeder*, 737 P.2d 52, 53 (Kan. Ct. App. 1987). In this case, CIT is identified on the certificates of title as the owner rather than a lienholder, and CIT did not file a NOSI.

Nevertheless, as the bankruptcy court noted, "[t]he majority approach across the states is that substantial compliance is the standard for perfection of security interests under state certificate of title statutes." *In re Charles,* 268 B.R. at 578 (citing 1 Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 12.03[1] at 12-14 (1993)). In discussing the "extent to which the courts should be able to soften the literal requirements of state certificate-of-title legislation if that softening is consistent with Article 9," Mr. Clark writes:

> This approach has the effect of "modernizing" the certificate of title statutes to fit better with the policies underlying Article 9 in general. Several courts have taken this approach, in effect allowing "substantial compliance" with the certificate of title statute rather

[2] All references herein to Kansas statutes are to the statutes that were in effect in June 1997 when the parties entered into the Master Lease Agreement.

than requiring "strict compliance." These decisions seem correct. . . . When a motor vehicle lease is a disguised Article 9 financing, showing the name of the lessor as owner rather than lienholder on the certificate of title should be sufficient because no third party could be misled.

Clark, *supra*, at 12-14.

Under the majority approach, regardless of any express statutory requirements, a secured creditor is not required to disclose its status as a lienholder on a vehicle's certificate of title in order to achieve perfected status. Instead, it is sufficient if the creditor is identified as the owner of the vehicle. *See Load-It, Inc. v. VTCC, Inc. (In re Load-It, Inc.)*, 774 F.2d 1077, 1078-79 (11th Cir. 1985) (holding security interest in motor vehicle perfected under Georgia law where secured creditor identified as owner on certificate of title); *In re Circus Time, Inc.*, 641 F.2d 39, 42-44 (1st Cir. 1981) (same, applying Maine and New Hampshire law); *In re Nat'l Welding of Mich., Inc.*, 61 B.R. 314, 317 (W.D. Mich. 1986) (same, applying Michigan law); *In re Microband Cos., Inc.*, 135 B.R. 2, 4-6 (Bankr. S.D.N.Y. 1991) (same, applying New York, New Jersey, Maryland, and Michigan law); *Yeager Trucking v. Circle Leasing of Colo. Corp. (In re Yeager Trucking)*, 29 B.R. 131, 134-35 (Bankr. D. Colo. 1983) (same, applying Colorado law); *Coble Sys., Inc. v. Coors of the Cumberland, Inc. (In re Coors of the Cumberland, Inc.)*, 19 B.R. 313, 320-21 (Bankr. M.D. Tenn. 1982)

(same, applying Tennessee law). [3]

Applying the majority approach to the issues in this case, the bankruptcy court concluded that: (1) a secured creditor is required only to substantially comply with the perfection provisions of the governing Kansas statutes in order to perfect a security interest in a motor vehicle; (2) the test for perfection under the substantial compliance standard is whether the creditor gave adequate notice of its interest to other potential secured creditors; and (3) CIT substantially complied with the perfection requirements under Kansas law for certificates of title because a search of the Kansas certificate of title records for the trucks would put other potential secured creditors on notice that CIT was claiming an interest in the vehicles. *In re Charles*, 268 B.R. at 577-79. The bankruptcy court's analysis is consistent with the substantial compliance standard adopted by the Kansas legislature for financing statements under Kansas' version of Article 9 of the Uniform Commercial Code. *See* KAN. STAT. ANN. § 84-9-402(8) (1995) ("financing statement substantially complying with the requirements of this

---

[3] *But see Wheels, Inc. v. Otasco, Inc. (In re Otasco, Inc.)*, 111 B.R. 976, 994 (Bankr. N.D. Okla. 1990) (holding, under Oklahoma law, that lease of motor vehicles was disguised security agreement and that identification of lessor on certificates of title as owner of vehicles was insufficient to perfect security interests in vehicles since Oklahoma law required delivery of "lien entry forms" to state agency), *rev'd on other grounds*, 196 B.R. 554, 560 (N.D. Okla. 1991) (holding that transaction involving the vehicles was true lease and not disguised security agreement).

section is effective [to perfect a security interest] even though it contains minor errors which are not seriously misleading").

The trustee nevertheless argues that the substantial compliance standard is inconsistent with Kansas law. We disagree. First, while the two Kansas cases primarily relied upon by the trustee hold that there are two ways to perfect a security interest in a motor vehicle under Kansas law, *see Mid Am. Credit Union v. Bd. of County Comm'rs*, 806 P.2d 479, 483-84 (Kan. Ct. App. 1991); *Beneficial Fin.*, 737 P.2d at 53, they did not address the substantial compliance issue this case presents. Similarly, although the commentary to K AN. STAT. ANN. § 84-9-302 (1996) provides that "security interests in motor vehicles can be perfected only by indication of the security interest on the certificate of title," we agree with the district court that the commentary does "not, in any manner, discuss or imply an opinion with respect to the situation presented here." Aplt. App. at 145.

This court's decisions in *Lentz v. Bank of Independence (In re Kerr)*, 598 F.2d 1206 (10th Cir. 1979), and *Pearson* are also not on point. In *Kerr*, we considered whether a secured creditor must file a NOSI under K AN. STAT. ANN. § 84-9-302(3)(c) to perfect a security interest in a motor vehicle if the debtor fails to obtain a certificate of title noting the creditor's lien, but we did not address the issues presented by this case. *See In re Kerr*, 598 F.2d at 1207-09. In *Pearson*, we held that UCC-1 financing statements for security interests in furnishings and

-8-

kitchen equipment that only identified the debtor's trade name were deficient and did not substantially comply with Kansas' Article 9 perfection requirements because subsequent creditors searching the UCC-1 filings against the debtor's legal name would not have been put on notice of any liens filed against the debtor's trade name. *See Pearson*, 831 F.2d at 1536. But *Pearson* is distinguishable because here CIT is identified on the certificates of title, and any potential secured creditor who performs a search of the Kansas certificate of title records for the trucks would be put on notice that CIT is claiming an interest in the trucks.

To support his attack on the substantial compliance standard, the trustee also relies on the comments to KAN. STAT. ANN. § 84-9-301 which provide as follows:

> Subsection (1)(b) subordinates an unperfected security interest to a lien creditor who becomes such before the security interest is perfected. The term 'lien creditor' is defined in subsection (3) to mean a judgment creditor who has obtained a levy of attachment or execution under Kansas law, and includes the trustee in bankruptcy. Thus, if the security interest is unperfected when a levy of attachment or execution is obtained, or when a petition in bankruptcy is filed, the security interest is subordinate, except as provided in subsection 2. It is irrelevant that the lien creditor knows of the security interest, as it was under pre-UCC Kansas law.

KAN. STAT. ANN. § 84-9-301 (1996), Kansas Comment (citations omitted). The trustee argues "that it is perfection of a security interest and not actual knowledge of the security interest that determines a party's perfected status and priority."

-9-

Aplt. Br. at 11. According to the trustee, therefore, the fact that a potential secured creditor would have actual knowledge that CIT is claiming an interest in the trucks if the creditor searched the Kansas certificate of title records is not a sufficient basis for excusing CIT from strictly complying with the perfection requirements under Kansas law. In so arguing, the trustee assumes the bankruptcy court equated perfection with actual knowledge of the security interest. He is mistaken, however, because the bankruptcy court instead equated perfection with notice. As the bankruptcy court stated, "[t]he substantial compliance standard, like Article 9, requires that the filing give notice to potential secured creditors. *Actual knowledge is irrelevant*." *In re Charles*, 268 B.R. at 579 (emphasis added).

The trustee also argues that adopting the substantial compliance standard may result in harm to innocent third-party creditors because, in cases where a creditor is identified as the owner of a vehicle on the certificate of title, an unscrupulous creditor could attempt to pledge the vehicle as collateral for a loan to itself. This argument overlooks the practical reality that any subsequent creditor would likely determine who has actual possession of the vehicle before making such a loan. Consequently, the trustee's argument pertains only to subsequent creditors who do not diligently investigate the status of the collateral and does not convince us the bankruptcy court reached the wrong result in this

case.

Finally, under Kansas law, the seller of a motor vehicle must deliver a certificate of title for the vehicle to the purchaser within thirty days of the delivery of the vehicle or the sale is rendered "fraudulent and void." KAN. STAT. ANN. § 8-135(c)(7) (1996). In accordance with his contention that CIT sold the trucks to the debtor, the trustee further contends that CIT's failure to deliver the certificates of title to the debtor within thirty days after the date the trucks were delivered rendered the transactions fraudulent and void under § 8-135(c)(7). Although the trustee's argument may have some merit in the event it is subsequently determined that the Master Lease Agreement was in fact a disguised security agreement and that CIT therefore sold the trucks to the debtor, the bankruptcy court has not made any determination with respect to the lease versus sale issue. *See In re Charles*, 268 B.R. at 576. The applicability of § 8-135(c)(7) cannot be decided until that determination is made.

Accordingly, consistent with KAN. STAT. ANN. § 84-9-402(8), *see supra* at 7-8, and based on the general weight and trend of authority from other jurisdictions, we predict that the Kansas Supreme Court would adopt a substantial compliance standard for motor vehicle certificates of title. We hold that CIT satisfied the standard in this case.

The judgment of the district court is AFFIRMED.