In re Terrance George O'NEILL, also known as Terrance G. Oneil, also known as Terrance G. Oneill, and Cynthia D. O'Neill, also known as Cynthia D. Mathews, also known as Cynthia D. Oneil, Debtors.

**Jeffrey L. Hill, Trustee, Plaintiff–Appellant,**

v.

**WFS Financial, Inc., Defendant–Appellee.**

BAP No. CO–06–064.
Bankruptcy No. 05–27079 ABC.
Adversary No. 05–01739 ABC.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 6, 2007.

Submitted on the briefs: *

Harvey Sender and David V. Wadsworth of Sender & Wasserman, P.C., Denver, Colorado, for Plaintiff–Appellant.

Janice Hofmann Clark and Andrew T. Snyder of Hopp & Shore, LLC, Englewood, Colorado, for Defendant–Appellee.

Before BOHANON, CORNISH, and NUGENT, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Appellant trustee appeals from a summary judgment order holding that the perfection of a security interest in a Colorado motor vehicle relates back to the date of its "filing" under applicable Colorado statute. The bankruptcy court held that § 9–317(e) of the Uniform Commercial Code ("UCC") as adopted in Colorado[1] is a "generally applicable law" that renders perfection of a security interest in a Colorado motor vehicle retroactive and subjects the trustee's avoiding powers to such relation back under 11 U.S.C. § 546(b)(1)(A). In so holding, the bankruptcy court rejected the trustee's assertion that the Colorado Certificate of Title Act (CCTA)[2] lacks a relation back provision and is therefore not a "generally applicable law." While we agree that the CCTA does not contain a "relation back" provision, we conclude that the CCTA renders the UCC inapplicable to titled vehicle transactions and REVERSE.

### I. *Jurisdiction*

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is a final order subject to appeal under 28 U.S.C. § 158(a)(1). The Appellant timely filed his notice of appeal.[4] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado, thus consenting to review by this Court.

### II. *Standard of Review*

The applicable standard of review of an order granting summary judgment is *de novo*, and this Court is to apply the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law.[5] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Colo.Rev.Stat. §§ 4–9–101–710 (2005).

2. Colo.Rev.Stat. §§ 42–6–101–147 (2005).

3. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

4. Fed. R. Bankr.P. 8002(a).

5. *Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1303 (10th Cir. 2005).

law."[6] Here, the matter was presented to the bankruptcy court on stipulated facts, leaving no material issue of fact. What remains for us is a *de novo* review of the bankruptcy court's legal conclusions.

### III. *The Facts and the Bankruptcy Court's Holding*

On July 2, 2005, the debtors purchased a car from John Elway Olds Honda Hyundai North ("Elway"), granting to Elway a purchase money security interest in the car. On the same day, Elway assigned the security interest to WFS Financial, Inc. ("WFS"). On July 11, 2005, WFS submitted the lien and title documents to the Boulder County Clerk and Recorder. On July 12, 2005, debtors filed their bankruptcy petition. On July 18, 2005, the clerk entered the lien in the Department of Motor Vehicles ("DMV") database. The DMV issued a title that reflects the "Date Filed" and "Date Accepted" of the lien as July 18, 2005.

Thereafter, the trustee filed an adversary proceeding seeking to avoid WFS' lien, claiming it was perfected after the petition date and may therefore be avoided and preserved for the benefit of the estate. On March 3, 2006, the trustee and WFS filed cross-motions for summary judgment. The parties also filed a Joint Statement of Stipulated Facts and Law. WFS argued that the relation back provision in Colorado's UCC applies to liens on automobiles and since it complied with the requirements of the certificate of title statute, it perfected its interest prepetition.

Relying on prior decisions of the bankruptcy judges sitting in Colorado, the bankruptcy court concluded that in order for a security interest in a motor vehicle to be perfected, the lien must be entered in the DMV database. That occurred after the petition date here. The bankruptcy court concluded that the CCTA does not contain a "relation back" provision and is therefore not a "generally applicable law that permits relation back of perfection" under § 546(b)(1)(A). Instead, the court held that Colo.Rev.Stat. § 4–9–317(e) applied to grant priority to WFS as of the date it filed its lien and title documents, July 11, 2005. Colorado Revised Statute § 4–9–317(e) provides that if the holder of a purchase money security interest files a financing statement within 20 days after the debtor receives the collateral, the security interest takes priority over an intervening lien creditor. Although WFS never filed a financing statement, it complied with the CCTA when its lien was noted in the DMV database which is "equivalent to the filing of a financing statement" under Colorado Revised Statute § 4–9–311(b). The bankruptcy court concluded that Colorado Revised Statute § 4–9–317(e) is a "generally applicable law" of the kind referenced in 11 U.S.C. § 546(b)(1)(A), and that the trustee's intervening claim, which arose on the debtors' bankruptcy petition filing date of July 12, 2005, was subsequent in priority to WFS' lien which related back to the July 11 lien and title filing date.

### IV. *Discussion* [7]

#### A. Issue on Appeal

The gist of the trustee's appeal is that the bankruptcy court erred in resorting to the UCC to resolve the case. Relying on express language in the CCTA that makes the UCC inapplicable to the "filing, recording, releasing, renewal and extension of

---

**6.** Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538 (10th Cir.1993).

**7.** All future references to "Section" or "§" refer to the Colorado Revised Statutes (2005), unless otherwise noted.

chattel mortgages ... [in] motor vehicles," [8] the trustee asserts that because there is no express relation back provision in the CCTA, WFS's security interest was perfected as of July 18, 2005, and is therefore subject to the trustee's avoiding powers. Thus, the sole issue on appeal is whether the UCC-exclusion language of § 42–6–120(1) renders § 4–9–317(e) inapplicable and, therefore, not "generally applicable law" that would provide for relation back under 11 U.S.C. § 546(b)(1).

In its first attempt to resolve this appeal, this Court certified the following questions to the Colorado Supreme Court, the final arbiter on matters of Colorado state law:

(1) Does the exclusion of the provisions of the Colorado Uniform Commercial Code as adopted in Title 4 of the Colorado Revised Statutes relating to the filing, recording, releasing, renewal, and extension of chattel mortgages in titled motor vehicles as provided for in Colo.Rev.Stat. § 42–6–120 operate to render inapplicable to vehicle title priority disputes the "relation-back" provisions of Colo.Rev.Stat. § 4–9–317(e)?

(2) Does the date of priority of a properly perfected purchase money security interest in a motor vehicle under the Colorado Certificate of Title Act, Colo.Rev.Stat. § 42–6–101, et seq., relate back to the date the secured party delivers title and lien documents to the county clerk under § 42–6–121?

By a 6–1 vote, the Colorado Supreme Court declined to answer these questions, leaving us to determine how the Colorado state courts might view the intersection between the CCTA and the Colorado UCC and how that intersection affects the relation back question. We must examine the perfection provisions in the CCTA, determine the extent to which the UCC, particularly § 9–317(e), may apply, and decide whether the CCTA contains a relation back provision.

## B.  Analysis

### 1.  The CCTA Filing Process

■ A Colorado secured lender perfects a security interest in a titled vehicle by complying with the CCTA. It provides that in order for any "mortgage" [9] to encumber or create a lien on a vehicle to be "perfected as a valid lien against the rights of third persons," it must be "filed for public record." [10] The fact of the filing is to be noticed on the certificate of title and the "filing of a mortgage with an authorized agent substantially in the manner provided in section 42–6–121 shall constitute notice to the world" of the secured creditor's rights. [11]

A Colorado secured lender perfects a security interest in a titled vehicle by following this process. [12] First, the secured party must present the "mortgage" and the certificate of title or an application for a certificate of title to the authorized agent for the director of the department of reve-

---

**8.**  Colo.Rev.Stat. § 42–6–120(1).

**9.**  For CCTA purposes, a "mortgage" is defined as a security agreement as defined in § 9–102 of the UCC. A "lien" is defined as an Article 9 security interest. *See* Colo.Rev.Stat. § 42–6–102(9) and (7), respectively.

**10.**  Colo.Rev.Stat. § 42–6–120(1).

**11.**  *Id.* We note that in 2005, this section of the CCTA was amended effective August 8, 2005, after the events in this case. That amendment added the sentence, "Such notice shall be effective on the date accepted as noted on the certificate of title." We consider that this amendment does not apply in this case.

**12.**  *See* Colo.Rev.Stat. § 42–6–121.

nue, in this case, the Boulder County Clerk and Recorder ("Clerk").[13] Second, when that mortgage and certificate or application for certificate is received, the Clerk is to satisfy him or herself that the vehicle referenced in the mortgage is the same as that referenced on the certificate or application.[14] If it is the same, the Clerk shall file within the "director's authorized agent's motor vehicle database" "notice" of the mortgage or lien "in which shall appear the day and hour on which said mortgage was received for filing" as well as "the day and year on which said mortgage was filed for public record...."[15] If the Clerk uses an electronic filing system, this information is to be transmitted to the director's central information registry.[16]

Section 42–6–130 of the CCTA provides that priority among mortgages filed for record or noted on a certificate of title "shall take priority in the same order that they were filed in the office of the authorized agent." Presumably this is why § 42–6–121 requires the Clerk to enter in the database "the day and hour" the Clerk received the mortgage. The date of the lien is to appear on the certificate of title whether it is issued on paper to the owner of the vehicle or maintained electronically in the central registry.

The bankruptcy courts sitting in Colorado have uniformly concluded that a security interest in a motor vehicle is perfected only when the Clerk files the mortgage or lien in the database. No bankruptcy judge sitting in Colorado has concluded that the CCTA contains a relation back provision.[17] A district court deciding a bankruptcy appeal has concluded that the effect of § 42–6–130 (granting priority to interests in vehicles in the order they are "filed for record"), read with § 42–6–121(1), is to relate perfection of a motor vehicle lien back to the date on which the secured party delivers the mortgage and certificate or application to the Clerk.[18]

## 2. The CCTA Excludes the Colorado UCC from Vehicle Transactions

The relationship between Colorado's CCTA and its UCC is defined by the express provisions of § 42–6–120(1) which states in part:

> Except as provided in this section, the provisions of the "Uniform Commercial Code", title 4, C.R.S., relating to the *filing, recording, releasing, renewal, and extension* of chattel mortgages, as the term is defined in section 42–6–102(9), *shall not apply to motor vehicles* [.]

§ 42–6–120(1) (emphasis added). Another reference to the UCC in this section renders the CCTA inapplicable to mortgages or security interests in vehicles held for inventory, and expressly provides that Ar-

---

**13.** Colo.Rev.Stat. § 42–6–102(1) defines "authorized agents" as the county clerk and recorder in each Colorado county and the manager of revenue for the city and county of Denver.

**14.** Colo.Rev.Stat. § 42–6–121.

**15.** *Id.*

**16.** *Id.*

**17.** *See Hepner v. AmeriCredit Fin. Servs., Inc. (In re Baker),* 338 B.R. 470 (Bankr.D.Colo. 2005) ("*Baker I* "), aff'd on other grounds and

acq. in result, 345 B.R. 261 (D.Colo.2006) ("*Baker II* "); *Schlosser v. DaimlerChrysler Servs., NA (In re Wilson),* 2006 Bankr.LEXIS 1351, at *5–6 (Bankr.D.Colo. January 3, 2006), *aff'd in part and appeal dismissed in part by Baker II.*

**18.** *Baker II,* 345 B.R. at 273–74. This decision is on appeal to the United States Court of Appeals for the Tenth Circuit, Docket No. 07–1183.

ticle 9 of the UCC will apply. The only other reference to the UCC in the CCTA is the adoption of the definitions contained in the UCC for certificate of title purposes.

Colorado's version of the UCC is codified in Title 4 of the Colorado Statutes. Article 9 of the UCC is adopted in Colo. Rev.Stat. § 4–9–101, et seq. Colorado's § 9–311 provides that a financing statement is unnecessary to perfect a security interest in property that is subject to a Colorado certificate of title law.[19] It further provides that compliance with the certificate of title statute is the equivalent of filing a financing statement, and that compliance with the titling statute is the only means of perfection as to certificated property (except in situations not relevant here).[20] Section 4–9–317(e) provides that if a secured party files a financing statement pertaining to a purchase money security interest before or within 20 days after the debtor receives the collateral, the security interest takes priority over the rights of an intervening buyer or lien creditor. If this safe harbor is available to Colorado secured parties claiming liens in motor vehicles as the bankruptcy court suggests, WFS would be entitled to judgment. Close study of these statutes and the UCC Official Commentary, read with the CCTA, suggests otherwise.

The drafters of revised Article 9 understood the likelihood that inconsistencies among the various states' title laws and the UCC would result in commercial confusion. The Official Comment to § 9–311 states:

> The interplay of this section with certain certificate-of-title statutes may create confusion and uncertainty. For example, statutes under which perfection does not occur until a certificate of title is issued will create a gap between the time that the goods are covered by the certificate under Section 9–303 and the time of perfection. If the gap is long enough, it may result in turning some unobjectionable transactions into avoidable preferences under Bankruptcy Code Section 547.... Accordingly, the Legislative Note to this section instructs the legislature to amend the applicable certificate-of-title statute to provide that perfection occurs upon receipt by the appropriate State official of a properly tendered application for a certificate of title on which the security interest is to be indicated.[21]

The drafters believed that "uncertainty" could be avoided by the various state legislatures conforming their title law to provide that delivery of the appropriate documents to the state filing official would mark the time at which perfection occurs. Colorado enacted the revised Article 9 in 2001, and in 2005, after the events in this case, amended its title law to specify that "such notice shall be effective on the date accepted as noted on the certificate of title."[22] For situations involving filings prior to the effective date of the amendment, however, the CCTA makes plain that only upon the entry of the lien into the Clerk's registry does such notice become effective.

### 3. Relation Back: UCC § 9–317(e) and the CCTA

█ The UCC drafters also recognized that relation back provisions in titling laws

---

**19.** Colo.Rev.Stat. § 4–9–311(a)(2).

**20.** Colo.Rev.Stat. § 4–9–311(b).

**21.** Colo.Rev.Stat. § 4–9–311, Official Comment 5.

**22.** Colo.Rev.Stat. § 42–6–120(1) (2004) (amended 2005).

could engender uncertainty to the extent they were inconsistent with, or exclusive of, the relation back provisions in Article 9. In further commentary, the drafters wrote:

> Under some certificate-of-title statutes, including the Uniform Motor Vehicle Certificate of Title and Anti–Theft Act, perfection generally occurs upon delivery of specified documents to a state official but may, under certain circumstances, relate back to the time of attachment. This relation-back feature can create great difficulties for the application of the rules in Sections 9–303 and 9–311(b). Accordingly, the Legislative Note also recommends to legislatures that they remove any relation-back provisions from certificate-of-title statutes affecting security interests.[23]

While the CCTA contains no express relation back provision, it does provide at § 42–6–130 that liens in motor vehicles shall have priority "in the same order as they were filed in the office of the authorized agent." If "filed" means in § 42–6–130 what it is defined to mean in § 42–6–102(6), then the priority section assigns priority on the basis of when the liens are entered in the electronic registry, and not when they are received in the Clerk's office. The Colorado legislature did not alter the contents of § 42–6–130 when it revised the CCTA in 2005.

■ The lack of an express relation back provision undoubtedly works a hardship on secured creditors. Prior to August of 2005, a purchase-money secured creditor could do everything in its power to properly perfect a vehicle security interest pursuant to Colorado law, but if its borrower filed a bankruptcy petition before

the Clerk transmitted the lien notice to the registry, the date of perfection would be later than the petition date, subjecting the lien to being avoided. The Legislature could easily have remedied this problem by either creating an express relation back provision in the CCTA or by amending § 42–6–120(1) to make Article 9 applicable to priority disputes concerning titled vehicles. At the time the WFS security interest was granted and filed, it had done neither. Nor has it to this day. We are therefore left to conclude that, for whatever reason, Colorado intends that: (1) Article 9 shall not apply to perfection and priority issues concerning certificated vehicles; and (2) a perfected security interest in a Colorado vehicle does not relate back to the date the secured party submitted its papers to the Clerk.

The bankruptcy court's order is a perfectly reasonable way to resolve the relation back issue, but it cannot be sustained given the UCC-excluding language of § 42–6–120(1). The decisions relied on by the bankruptcy court apply Arizona and Iowa law. In those states, the UCC expressly governs the perfection of motor vehicle liens, making the benefits of § 9–317(e) and 11 U.S.C. § 546 available to lenders caught in a similar snare. In Colorado, it does not. Of the Colorado bankruptcy decisions that address the question of relation back and vehicle liens, this is the only one that concludes that, notwithstanding the exclusion language contained in the CCTA, § 4–9–317(e) applies.

Several Colorado bankruptcy decisions conclude that Colorado law affords no relation back for vehicle liens whatsoever. In *Baker I*,[24] the bankruptcy court concluded

---

**23.** Colo.Rev.Stat. § 4–9–311, Official Comment 5.

**24.** *Hepner v. AmeriCredit Fin. Servs., Inc. (In re Baker),* 338 B.R. 470 (Bankr.D.Colo.2005), *aff'd on other grounds and acq. in result,* 345 B.R. 261 (D.Colo.2006).

that the CCTA afforded no relation back protection to a lender. In that case, the court denied the protection of the enabling loan defense in a preference action where the debtor took delivery of a vehicle before filing his petition. Without referring to the UCC at all, the *Baker I* court concluded that perfection of a vehicle lien occurs when the lien is filed for public record in the registry, not when it is delivered to the Clerk. Concluding that many other states have expressly included relation back in their titling schemes, the *Baker I* court noted the absence of any such provision from the Colorado statute. The court essentially dismissed the lender's argument that § 42–6–130 was a relation back provision, stating that the "statute assigns priority in the order that the liens are entered into the Central Registry."[25]

On appeal, the district court reversed, holding that, when read together, §§ 42–6–120(1), 121, and 130 can be construed to have a relation back effect, making the CCTA a "generally applicable law" within the meaning of 11 U.S.C. § 546(b)(1)(A).[26] The district court reasoned as such because § 42–6–130 "assigns motor vehicle priority according to the time the mortgage paperwork is delivered, once perfected, the lien would be superior to certain third party interests acquired in the vehicle after the delivery date."[27] In order to arrive at this conclusion, the district court defined the word "filed," a term defined in the statute itself, in two different ways. The district court concluded that the filing of a "lien" and the filing of a "mortgage" are two different acts: that filing the

mortgage with the Clerk establishes its priority, while filing the lien for record achieves perfection.[28] The district court stated:

> [T]he final act for perfection is the entry of the lien notice into the Central Registry. Once this occurs, however, perfection relates back to the time the mortgage and title paperwork were delivered to the [Clerk].[29]

■ The introductory portion of § 42–6–102 provides that the definitions of these defined terms apply in the CCTA "unless the context otherwise requires." We note, too, that § 42–6–130 speaks not only to "liens … filed for record or noted on a certificate of title" but also liens "filed in the office of the authorized agent." Certainly the former "filing" refers to the electronic entry on the registry while the latter may or may not. We respectfully disagree with the district court's conclusion that relation back can be inferred from a reading of the three provisions, and instead agree with the *Baker I* court's conclusion that § 42–6–130 serves only to prioritize vehicle liens in the order they are filed in the registry, not in the order that they are received by the Clerk.

One other bankruptcy judges in Colorado has concluded that vehicle title perfection does not relate back to the date the liens are submitted to the Clerk, albeit on differing grounds. In *In re Wilson,* the bankruptcy judge followed the first *Baker* case, finding that perfection was based upon the entry of the lien into the registry's database and commented that "to

---

**25.** *Id.* at 480.

**26.** *Baker II,* 345 B.R. at 273. We note that the district court stayed, pending further appeal thereof, its consideration of the question of the availability of the relation back provisions of § 9–317(e). *Id.* at 274.

**27.** *Id.* at 273.

**28.** *Id.*

**29.** *Id.* at 274.

rule otherwise would be contrary to the strict construction of the [CCTA] and result in judicial activism[.]" [30]

## V. *Conclusion*

Whether Colorado vehicle lienholders should have the safe harbor of a relation back provision that would protect them from intervening bankruptcy filings can only be determined by the Colorado legislature and state courts. Although we credit both the bankruptcy court's effort to fashion such protection by recourse to the UCC in this case and the district court's expansive reading of the CCTA itself in *Baker II,* we conclude that the plain meaning of § 42–6–120(1) excluding transactions like these from the UCC and the presence in the CCTA of a priority provision, § 42–6–130, require that the bankruptcy court's decision be REVERSED with directions that the trustee's motion for summary judgment be granted, the creditor's summary judgment motion denied, and judgment be entered for the trustee accordingly.

---

30. *Schlosser v. DaimlerChrysler Servs., NA (In re Wilson),* 2006 Bankr.LEXIS 1351, at *5–6 (Bankr.D.Colo. January 3, 2006).