**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: ROBERT JAMES ROSER,

　　　　Debtor.

----------------------------

SOVEREIGN BANK,

　　　　　　Appellant,

　　　v.

DANIEL A. HEPNER, Chapter 7
Trustee,

　　　　　　Appellee.

No. 09-1341

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:08-CV-02313-WYD)**

---

Matthew J. McGowan, Salter McGowan Sylvia & Leonard, Inc., Providence, Rhode Island, for Appellant.

Joli A. Lofstedt, Connolly, Rosania & Lofstedt, P.C., Louisville, Colorado, for Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

On May 19, 2007, Sovereign Bank gave Robert James Roser a secured loan to purchase a motor vehicle, and he took possession of the vehicle that day. Nineteen days later, on June 7, the Bank filed its lien in compliance with the Colorado Certificate of Title Act (CCTA), Colo. Rev. Stat. § 42-6-121 (2007). Because the Colorado Uniform Commercial Code (Colorado UCC), which closely tracks the Uniform Commercial Code (UCC), gives priority over other security interests to a purchase-money security interest that is filed within 20 days of the purchaser's taking delivery of the collateral, *see* Colo. Rev. Stat. § 4-9-317(e) (2007), the Bank felt secure.

But there was a complication. On May 31 Roser filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. Relying on the prior opinion of the Bankruptcy Appellate Panel for the Tenth Circuit (BAP) in *In re O'Neill*, 370 B.R. 332 (B.A.P. 10th Cir. 2007), the bankruptcy court held that the trustee in bankruptcy (the Trustee) could avoid the Bank's lien, *see* 11 U.S.C. § 544(a) (authorizing trustee to avoid certain liens). It noted that the CCTA supersedes the Colorado UCC with respect to perfection of motor-vehicle liens and held that Colorado UCC § 4-9-317(e) does not apply to the Bank's lien in this case. Because the Bank's lien was not perfected before the filing of Roser's bankruptcy petition, the court held that the Trustee's interest is superior to the Bank's lien. The court

added that the Bank's postpetition perfection of its lien violated the automatic stay under 11 U.S.C. § 362(a). The district court affirmed.

The Bank appeals. *See* 28 U.S.C. § 158(d) (jurisdiction over bankruptcy appeals from the district courts). Rejecting *O'Neill*, we reverse. *O'Neill* misconstrued Colorado law. The CCTA does not supersede Colorado UCC § 4-9-317(e) because the provision does not govern the manner or timing of the perfection of liens. It governs only the priority of a lien and is not inconsistent with the CCTA. As a generally applicable law, § 4-9-317(e) gave the lien of the Bank priority over the Trustee's interest in Roser's vehicle. And the automatic stay did not prohibit the Bank from its postpetition perfection of its lien under the CCTA because such perfection is excepted from the stay by 11 U.S.C. § 362(b)(3).

## I.    DISCUSSION

"Our review of the bankruptcy court's decision is governed by the same standards of review that govern the district court's review of the bankruptcy court." *In re Charles*, 323 F.3d 841, 842 (10th Cir. 2003) (internal quotation marks omitted). Because this case presents no disputed factual issues but only matters of law, our review is de novo. *See id.*

### A.    Priority of Interests

The Bankruptcy Code gives the bankruptcy trustee the rights and powers of a hypothetical person who acquired a judicial lien on the debtor's property at the

-3-

time that the bankruptcy petition was filed.  *See* 11 U.S.C. § 544(a).[1]  He can

avoid any lien inferior to his interest in an asset of the bankruptcy estate.  *See In*

*re Haberman*, 516 F.3d 1207, 1210 (10th Cir. 2008) (trustee has "the power to

avoid any transfer or obligation that a hypothetical creditor with an unsatisfied

judicial lien on the debtor's property could avoid under relevant state

nonbankruptcy law.").  In general, the trustee can avoid liens that are unperfected

when the petition for bankruptcy is filed.  *See In re Charles*, 323 F.3d at 842.  But

in some circumstances a lien that is perfected after the bankruptcy filing may

nevertheless have priority.  Under § 546(b) of the Bankruptcy Code a trustee's

avoidance rights "are subject to any generally applicable law that . . . permits

perfection of an interest in property to be effective against an entity that acquires

rights in such property before the date of perfection."  11 U.S.C. § 546(b)(1)(A).

The term *generally applicable law* "relates to those provisions of applicable law

that apply both in bankruptcy cases and outside of bankruptcy cases."  S. Rep.

_____

[1]11 U.S.C. § 544(a)(1) provides in full:

(a)     The trustee shall have, as of the commencement of the case,
and without regard to any knowledge of the trustee or of any
creditor, the rights and powers of, or may avoid any transfer of
property of the debtor or any obligation incurred by the debtor that is
voidable by—

(1)     a creditor that extends credit to the debtor at the time of
the commencement of the case, and that obtains, at such time
and with respect to such credit, a judicial lien on all property
on which a creditor on a simple contract could have obtained
such a judicial lien, whether or not such a creditor exists.

-4-

No. 95-989, at 86 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787; *see Makoroff v. City of Lockport*, 916 F.2d 890, 892 (3d Cir. 1990); 5 Collier on Bankruptcy ¶ 546.03[2][a], at 546-23 (Lawrence P. King ed., 15th ed. rev. 2006). The applicable law in this case is the law of Colorado. *See In re Charles*, 323 F.3d at 842–43.

The Bank presents a straightforward argument why its lien would have priority under Colorado law over a lien of a judgment creditor who obtained judgment at the time Roser filed for bankruptcy. Under the Colorado UCC:

> [I]f a person [1] files a financing statement [2] with respect to a purchase-money security interest [3] before or within twenty days after the debtor receives delivery of the collateral, the security interest takes priority over the rights of a buyer, lessee, or lien creditor which arise between the time the security interest attaches and the time of filing.

Colo. Rev. Stat. § 4-9-317(e) (2007). (As discussed below, this section was amended after Roser filed his petition.) There is no doubt that the Bank satisfied the requirements of this section. The filing of a lien under the CCTA constitutes the filing of a financing statement. *See* Colo. Rev. Stat. § 4-9-311(b) ("Compliance with the requirements of a [certificate-of-title statute] is equivalent to the filing of a financing statement.").[2] And there is no dispute that the Bank

_____

[2]Colo. Rev. Stat. § 4-9-311 (2007) states in pertinent part:

(a) Except as otherwise provided in subsection (d) of this section [relating to inventory], the filing of a financing statement is not necessary or effective to perfect a security interest in property

(continued...)

complied on June 7, 2007, with the requirements for filing a motor-vehicle lien under the CCTA.  *See id.* § 42-6-121 (2007).  Nor is there any dispute that the Bank held a purchase-money security interest in Roser's vehicle.  *See id.* § 4-9-103(a) & (b) (defining *purchase-money security interest*).  Thus, because

---

[2](...continued)
subject to:

. . . .

(2) A certificate-of-title statute of this state covering automobiles or other goods, which provides for a security interest to be indicated on the certificate as a condition or result of perfection of the security interest;

. . . .

(b) Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) of this section for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article.  Except as otherwise provided in subsection (d) of this section [relating to inventory] and sections 4-9-313 and 4-9-316(d) and (e) [relating to (1) perfection by possession by or delivery to secured party and (2) initial perfection in another jurisdiction] for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection (a) of this section may be perfected only by compliance with those requirements, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

(c) Except as otherwise provided in subsection (d) of this section and section 4-9-316(d) and (e), duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute, regulation, or treaty described in subsection (a) of this section are governed by the statute, regulation, or treaty. In other respects, the security interest is subject to this article.

the Bank filed its lien within 20 days of Roser's obtaining the vehicle, it contends

that Colorado UCC § 4-9-317(e) gives its lien a priority over any rights in the

vehicle—including the Trustee's interest as a hypothetical judicial-lien

creditor—that arose between the time that the Bank's security interest attached

(May 19, 2007, when it closed the loan) and its CCTA filing on June 7.

The Trustee argues, however, that we should follow the holding of the BAP

in *O'Neill*. Although there were complications in *O'Neill* not present in this case,

the BAP ultimately held that the bankruptcy trustee could avoid a purchase-

money security interest in an automobile that had been filed under the CCTA

within 20 days of the purchase but after the purchaser had filed for bankruptcy.

*See O'Neill*, 370 B.R. at 333–34. The BAP reasoned that Colorado UCC § 4-9-

317(e) does not apply to liens perfected under the CCTA. *See id.* at 337–38. As

did the BAP in *O'Neill*, the Trustee relies on the following sentence in the CCTA:

"Except as provided in this section, the provisions of the 'Uniform Commercial

Code,' title 4, Colo. Rev. Stat., relating to the filing, recording, releasing,

renewal, and extension of chattel mortgages, as the term is defined in section

42-6-102(9), shall not apply to motor vehicles." Colo. Rev. Stat. § 42-6-120(1)

(2007).

We do not read CCTA § 42-6-120(1) as broadly as *O'Neill* did. To be sure,

the CCTA provides its own distinct methods for filing, recording, and perfecting

motor-vehicle liens, *see* Colo. Rev. Stat. § 42-6-121, releasing such liens, *see id.*

-7-

§ 42-6-125, and extending them, *see id.* § 42-6-127. It thus clearly supersedes the Colorado UCC with respect to those procedural matters regarding motor-vehicle liens. But the subject matter of Colorado UCC § 4-9-317(e) is not encompassed within the procedural matters preempted by § 42-6-120(1): "filing, recording, releasing, renewal, and extension" of liens. Indeed, the Colorado UCC adopts the CCTA's own methods for filing, recording, releasing, renewing, or extending liens. *See id.* §§ 4-9-311(b) (compliance with requirements of a certificate-of-title statute constitutes filing of a financing statement for purposes of Colorado UCC), 4-9-311(c) (similarly incorporating rules for duration and renewal of perfection of security interest). Accordingly, in applying the Colorado UCC, the date of perfection for a properly filed motor-vehicle lien is established by the CCTA. What Colorado UCC § 4-9-317(e) does is then govern the *priority* of the rights of creditors in light of that perfection date. Here, for example, the perfection date under the CCTA was June 7, 2007. Given that perfection date, § 4-9-317(e) states that the Bank's lien had priority over rights of other lien creditors—such as the Trustee—that arose after Roser acquired his vehicle on May 19, 2007.

The Trustee's three arguments to the contrary are not persuasive. First, he argues that the supersession of Colorado UCC § 4-9-317(e) by the CCTA is clear from another CCTA provision, Colo. Rev. Stat. § 42-6-130 (2007), which states:

> The liens or mortgages filed for record or noted on a certificate of title to a motor vehicle, as provided in section 42-6-121, shall take priority in the same order that they were filed in the office of the authorized agent.

But any supersession of the priority provisions of the Colorado UCC by this provision can only be partial. We recognize that CCTA § 42-6-130 establishes priority among liens filed under the CCTA. Perhaps it even overrides Colorado UCC § 4-9-317(e) when a purchase-money security interest is filed under the CCTA after another lien is filed under the CCTA (a matter we need not resolve). But § 42-6-130 says nothing about the priority of a lien filed under the CCTA relative to interests in a motor vehicle not perfected under the CCTA (such as a judgment lien), which is the issue confronting us. We think it unlikely that the legislature intended to create a legal limbo in that situation. The obvious inference is that the priorities under the Colorado UCC, including § 4-9-317(e), would govern. *Cf. id.* § 4-9-311(c) ("In other respects, the security interest [perfected under a certificate-of-title statute] is subject to this article.").

Second, the Trustee claims that the official commentary to the UCC supports his contention that Colorado UCC § 4-9-317(e) does not apply to liens filed under the CCTA. As we understand his argument, it derives from the following passage in *O'Neill*:

> The UCC drafters . . . recognized that relation back provisions in titling laws could engender uncertainty to the extent they were inconsistent with, or exclusive of, the relation back provisions in Article 9. In further commentary, the drafters wrote:

> Under some certificate-of-title statutes, including the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act, perfection generally occurs upon delivery of specified documents to a state official but may, under certain circumstances, relate back to the time of attachment. This relation-back feature can create great difficulties for the application of the rules in Sections 9-303 [relating to time that goods are covered by a jurisdiction's certificate-of-title statute] and 9-311(b). Accordingly, the Legislative Note also recommends to legislatures that they remove any relation-back provisions from certificate-of-title statutes affecting security interests.

*O'Neill*, 370 B.R. at 337–38 (quoting UCC § 9-311 cmt. 5). *O'Neill* apparently read the comment as recommending that states exclude relation-back provisions like § 4-9-317(e) from applying to liens governed by certificate-of-title statutes. But that reading would be mistaken.

To begin with, the first paragraph of the UCC comment explicitly states that the consequences of perfection are governed by UCC Article 9 even if the manner of perfection is set forth in another statute. The first paragraph states in full:

> Subsection (b) [of § 9-311] makes clear that compliance with the perfection requirements (i.e., the requirements for obtaining priority over a lien creditor), but not other requirements, of a statute, regulation, or treaty described in subsection (a) [of § 9-311, which describes, among other things, certificate-of-title statutes] is sufficient for perfection under this Article. *Perfection of a security interest under such a statute, regulation, or treaty has all the consequences of perfection under this Article*.

UCC § 9-311 cmt. 5 (emphasis added).

-10-

Moreover, the paragraph of comment 5 quoted by *O'Neill* is not speaking

of UCC priority provisions such as Colorado UCC § 4-9-317(e) when it criticizes,

and recommends repeal of, "relation-back provisions from certificate-of-title

statutes affecting security interests," U.C.C. § 9-311 cmt. 5.  Rather, the concern

is with provisions that deem the perfection date to be one before actual

perfection.  This is made clear by the comment's reference to the provision of the

Uniform Motor Vehicle Certificate of Title and Anti-Theft Act[3] that permits

perfection to "relate back to the time of attachment." UCC § 9-311 cmt. 5.  This

provision states:

> A security interest is perfected by the delivery to the Department of
> the existing certificate of title, if any, an application for a certificate
> of title containing the name and address of the lienholder and the
> date of his security agreement and the required fee [and registration
> card]. *It is perfected as of the time of its creation if the delivery is*
> *completed within ten (10) days thereafter*, otherwise as of the time of
> delivery.

Unif. Motor Vehicle Certificate of Title and Anti-Theft Act § 20(b), Selected

Commercial Statutes at 1241 (West 2009) (alteration in original, emphasis added).

Section 4-9-317(e), in contrast, does not reset the date of perfection; instead it

gives some security interests priority over earlier-perfected security interests.  A

relation-back provision of the sort addressed in the comment may have some

consequences similar to those caused by § 4-9-317(e); but the manner in which

---

[3]In 1978 the National Conference of Commissioners on Uniform State Laws
withdrew this uniform act as obsolete.  11 U.L.A.199 (2003).

such a provision interacts with provisions of the UCC that are based on the actual date of perfection can cause unintended consequences to the carefully crafted scheme of the UCC. *See* UCC § 9-311 cmt. 5 ("This relation-back feature can create great difficulties for the application of the rules in Sections 9-303 and 9-311(b)."). The comment is not suggesting that certain UCC provisions not apply in the context of certificate-of-title statutes. It is stating that provisions in certificate-of-title statutes that reset the perfection date may create problems when applying UCC Article 9 (which, the comment observes, generally governs liens filed under such statutes) and therefore should be repealed.

The Trustee's third argument for supersession of Colorado UCC § 4-9-17(e) by the CCTA is based on statutory amendments enacted in response to *O'Neill* (but too late to help the Bank in this case). The Colorado legislature amended the Colorado UCC and the CCTA to provide expressly that § 4-9-317(e) applies in the motor-vehicle context, effective for liens filed after April 22, 2009. *See* 2009 Colo. Legis. Serv. Ch. 182 (S.B. 09-150), sec. 5.[4] There would be no

---

[4]The Colorado legislature enacted the following amendments (additions are emphasized):

Colo. Rev. Stat. § 4-9-317(e): Except as otherwise provided in sections 4-9-320 and 4-9-321, if a person files a financing statement with respect to a purchase-money security interest before or within twenty days after the debtor receives delivery of the collateral, *or if a person perfects under article 6 of title 42, C.R.S., a purchase-money security interest in a motor vehicle, other than inventory, before or within thirty days after the debtor receives delivery of the motor vehicle,* the security interest takes priority over the rights of a buyer,

(continued...)

need for these amendments, the Trustee claims, if § 4-9-317(e) had previously

been applicable.  But these amendments do not confirm the Trustee's

_____

[4](...continued)
lessee, or lien creditor which arise between the time the security interest attaches and the time of filing.

Colo. Rev. Stat. § 4-9-324(a): Except as otherwise provided in subsection (g) of this section, a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and, except as otherwise provided in section 4-9-327, a perfected security interest in its identifiable proceeds also has priority, if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within twenty days thereafter, *or, if the collateral is a motor vehicle, as defined in section 42-6-102, C.R.S., within thirty days thereafter.*

Colo. Rev. Stat. § 4-6-120(1): (1) Except as provided in this section *and section 42-6-130,* the provisions of the "Uniform Commercial Code", title 4, C.R.S., relating to the filing, recording, releasing, renewal, *priority,* and extension of chattel mortgages, as the term is defined in section 42-6-102(9), shall not apply to motor vehicles. Any mortgage or refinancing of a mortgage intended by the parties to the mortgage or refinancing to encumber or create a lien on a motor vehicle, or to be perfected as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner, shall be filed for public record. The fact of filing shall be noted on the owner's certificate of title or bill of sale substantially in the manner provided in section 42-6-121.

Colo. Rev. Stat. § 42-6-130: The liens or mortgages filed for record or noted on a certificate of title to a motor vehicle, as provided in section 42-6-121, shall take priority in the same order that they were filed in the office of the authorized agent; *except that the priority of a purchase-money security interest, as defined in section 4-9-103, C.R.S., shall be determined in accordance with sections 4-9-317(e) and 4-9-324(a), C.R.S.*

The legislature also added a subsection (subsection 4) to Colo. Rev. Stat. § 42-6-120.  That subsection states: "The rights of a buyer, lessee, or lien creditor that arise after a mortgage attaches to a motor vehicle and before perfection under this article shall be determined by section 4-9-317, C.R.S."

interpretation of the pre-amendment law, which applies here. Even if the post-*O'Neill* legislature thought that *O'Neill* had been decided correctly, a later legislature cannot change the meaning of a statute; it can only amend the statute. Its view of *O'Neill*'s interpretation of the prior statute would not be dispositive, or even particularly persuasive. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117–18 (1980) (cautioning that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one" (internal quotation marks omitted)). And, in any event, it would be speculating to say that the legislature's response to *O'Neill* was an endorsement of *O'Neill*'s interpretation. The Trustee does not explain how the legislature would have acted differently if it had disagreed with how *O'Neill* read the prior statute.

Thus, Colorado UCC § 4-9-317(e) is not superseded by the CCTA, and the Bank's lien would have priority over a hypothetical judgment lien obtained on May 31, 2007. Because the Trustee has not disputed that § 4-9-317(e) applies in nonbankruptcy cases, the provision is "generally applicable law" within the meaning of § 546(b)(1)(A) of the Bankruptcy Code and governs the dispute before us. *See* 5 Collier on Bankruptcy ¶ 546.03[2][a], at 546-22 to 546-23 (noting that UCC § 9-317(e) is "generally applicable law" under § 546 of the Bankruptcy Code). The Trustee cannot avoid the Bank's lien.

-14-

## B.  Automatic Stay in Bankruptcy

Finally, because the Bank filed its lien after Roser filed his Chapter 7 petition, the Trustee argues that the Bank's perfection violated the automatic stay in bankruptcy and was ineffective.  We disagree.

Section 362(a) of the Bankruptcy Code provides for an automatic stay of a number of actions immediately upon the filing of a bankruptcy petition under any chapter of the Code.  *See generally* 3 Collier on Bankruptcy ¶ 362.03 (discussing the scope of the stay).  In particular, § 362(a)(4) provides for the automatic stay of "any act to create, perfect, or enforce any lien against the property of the estate."

Excepted from the automatic stay, however, is "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title."  11 U.S.C. § 362(b)(3); *see* 5 Collier on Bankruptcy ¶ 546.03[5], at 546-28.  Section 546(b) states in pertinent part:  "The rights and powers of a trustee under section[] 544 . . . of this title are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in the property before the date of perfection." 11 U.S.C. § 362(b)(1)(A).  Colorado UCC § 4-9-317(e) is such a law; it permits perfection of a purchase-money security interest to be effective against interests acquired before the date of perfection.  *See* 3 Collier on Bankruptcy ¶ 362.05[4],

-15-

at 362-54 to 54.1 (postpetition perfection under UCC § 9-317(e) is "effective against the trustee under section 546(b)" and thus not subject to the automatic stay); *cf. In re Lockridge*, 303 B.R. 449, 456–57 (Bankr. D. Ariz. 2003) (although § 362(b)(3) may prevent automatic stay from applying to postpetition perfection under UCC § 9-317(e), debtor nevertheless entitled to automatic stay because creditor failed to perfect its interest within § 4-9-317(e)'s 20-day time limit). The perfection of the Bank's purchase-money security interest did not violate the automatic stay.

## II.    CONCLUSION

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.