2011 OK 82

**OKLAHOMA DEPARTMENT OF SECURITIES ex rel. Irving L. FAUGHT, Administrator and Douglas L. Jackson, in His Capacity as the Court Appointed Receiver for the Investors and Creditors of Schubert & Assoc. and for the Assets of Marsha Schubert, Plaintiffs/Appellees,**

v.

**Marvin Lee WILCOX and Pamela Jean Wilcox, Defendants/Appellants.**

No. 109,111.

Supreme Court of Oklahoma.

Oct. 11, 2011.

Rehearing Denied Dec. 6, 2011.

Bradley E. Davenport, Gungoll, Jackson, Collins, Box & Devoll, P.C., and Oklahoma City, OK, for Appellee Douglas L. Jackson, Receiver.

Amanda Cornmesser, Melanie Hall and Gerri Kavanaugh, Oklahoma Department of Securities, Oklahoma City, OK, for Appellee Oklahoma Department of Securities.

Robert N. Sheets, Phillips Murrah, P.C., Oklahoma City, OK, for Appellants.

EDMONDSON, J.

¶1 This is a second appeal resulting from a Ponzi scheme perpetrated by Marsha Schubert, operating as Schubert and Associates (Schubert). The facts are set forth in the first appeal, *Dept. Of Securities ex rel. Faught v. Blair*, 2010 OK 16, 231 P.3d 645 (*Blair*). The defendants herein, Marvin and Pamela Wilcox, were among the appellants in *Blair* appealing from summary judgments obtained by the plaintiffs on the theory of unjust enrichment against 158 "relief" defendants who had received more money than they invested in the Ponzi scheme.[1] Plaintiffs had sought to recover all amounts the relief defendants had received from the scheme in excess of their original investment.

¶2 In *Blair*, the relief defendants had not been charged with violating the Oklahoma Securities Act of 2004, 72 O.S. Supp.2003 § 1–101, et seq., and the preliminary question was whether the Department could proceed against non-violators of the Act. We held that the Act provided authority for the Oklahoma Department of Securities to bring an action against innocent investors in a Ponzi scheme when they received a profit from the Ponzi scheme that was an unreasonable return on their investment. We held that the court-appointed receiver could bring a proceeding for equitable relief against innocent investors for recovery of funds that qualify as an unjust enrichment obtained by the investors from the Ponzi scheme. We held that an Oklahoma District Court has subject matter jurisdiction to adjudicate competing equitable claims of ownership to funds that were part of an investment scheme which violated the securities laws. We also held that an innocent investor in a Ponzi scheme may use equitable setoffs in defense against an unjust enrichment claim brought by the plaintiffs.

¶3 On remand, the Department of Securities and the Receiver (referred to herein as Department) moved for summary judgment against the defendants, Marvin and Pam Wilcox (Wilcoxes), on grounds that the Wilcoxes

---

1. The Wilcoxes were appellants in Supreme Court No. 104,004.

were not entitled to the equitable relief provided for innocent investors in *Blair* because they were partners with Schubert and were actively involved in the check-kiting scheme operated by Schubert that supported her Ponzi scheme.[2] Department argued that more than $150,000,000.00 ran though the Wilcoxes' bank accounts, that they saw no statements from a day trading account and that they acted with reckless disregard for the legitimacy of Schubert's scheme. Department listed eighteen (18) undisputed material facts.

¶ 4 Department asserts that it was undisputed that Schubert's Ponzi scheme was supported by a long-running check exchange or check-kiting scheme, primarily between the accounts of three individuals, including the defendant Marvin Wilcox, and the accounts of Schubert. The consistent movement of funds between these accounts created a "float" that Schubert used to pay purported investment returns. In exchange for a check drawn on an account of Marvin Wilcox, Schubert would write a check from one of her bank accounts, usually for a greater dollar amount, payable to Marvin Wilcox.

¶ 5 Between December 12, 2002, and October 6, 2004, more than 650 transactions took place between Schubert and the Wilcoxes involving the check exchange. The Wilcoxes transferred $77,739,746.00 to Schubert and Schubert transferred back to the Wilcoxes $78,249,251.56. The Wilcoxes received $509,505.00 in profits paid to them by Schubert from Schubert's commingled funds. In support of these undisputed facts, Department attached the affidavit of Dan Clarke, a certified fraud examiner and supervisory investigator for Department, based on his analysis of deposits and disbursements from the various Schubert accounts.

¶ 6 In support of the motion, Department offered evidence the Wilcoxes were in partnership with Schubert. They attached Schedule E forms (Supplemental Income and Loss from Partnerships) from the Wilcoxes' IRS 1040 returns for tax years 2002 and 2003, in which they reported to the IRS that they were partners with Schubert & Associ-

ates. Department asserted, based on deposition testimony of Marvin Wilcox, that it was undisputed that Wilcox never saw any records relating to a day trading account and never received any statements from such an account. Marvin Wilcox was in the banking industry his entire adult life, last serving as Vice President of NBC Bank in Kingfisher. Wilcox gave Schubert physical control of multiple checks from his bank accounts that were blank except for his signature. The Wilcoxes received monthly bank account statements for their personal checking accounts, but claimed that they did not review or reconcile them.

¶ 7 In response, the Wilcoxes disputed that they were partners with Schubert. They stated that they did not prepare their tax returns and did not know why they were shown as partners with Schubert on their 2002 and 2003 tax returns. They claimed that they were never partners with Schubert and they never received any K–1 partnership forms from the partnership. The Wilcoxes admitted that they did not receive statements or anything that specifically referred to a specific day trading account, but stated that they did receive written notes from Schubert that allegedly contained account balances from day trades. They argued that it was a fact question whether or not they were innocent investors. The Wilcoxes submitted their own identical affidavits as evidence in support of their objections. They stated that they were not aware of the existence of a Ponzi scheme in their dealings with Schubert.

¶ 8 The Wilcoxes also disputed Department's calculations of the amount of their net profits from the commingled funds. The Wilcoxes admitted that they received $77,583,050.00 from Schubert, and claimed that their net profit from the commingled funds was $133,945.00, not $509,505.00. They argued that whether their $133,945.00 in net profits was "unreasonable" under the *Blair* standard presented a question of fact. The Wilcoxes did not dispute the remainder

---

2. Department raised other grounds for summary judgment which we need not consider here due to the trial court's ruling on the issue of Wilcoxes conduct vis a vis Schubert.

of plaintiffs' undisputed facts regarding the Ponzi and check-kiting scheme.[3]

¶ 9 Department refuted the Wilcoxes' denial of their partnership with Schubert by attaching the two K–1 "Partner's Share of Income" forms for 2002 and 2003 produced by the Wilcoxes during discovery and attached to their signed IRS tax returns for those years. Department also submitted a photocopy of a letter from Marvin Wilcox to AXA (where Wilcox had an account and for whom Schubert had worked) dated July 7, 2004, in which Wilcox stated that he was partners with Schubert and had entered the partnership at his own risk, knowing that the money he invested with Schubert in an options account was not guaranteed in any form. As to the receipt by Wilcox of any records pertaining to a day trading account, Department asserted, based on Wilcox's deposition testimony, that the "written notes" that Wilcox claimed to have received were nothing more than "sticky notes" on which Schubert would write down an account balance when requested. Department attached the accounting, prepared by a CPA firm, on which their calculation of $509,505.00 in net profits was based, along with photocopies of the Wilcoxes' bank statements reflecting check exchanges with Schubert on an almost daily basis.

¶ 10 At the hearing on the plaintiffs' motion for summary judgment, the Wilcoxes' attorney advised the trial judge that they disputed the amount of net profit and whether the return on investment was reasonable, arguing that these were fact questions not proper for summary judgment.[4] The Wilcoxes made no further argument regarding their status as "innocent investors" nor did they seek to offer additional evidence on that issue.

¶ 11 The trial judge granted partial summary judgment in favor of the plaintiffs on the issue of liability, finding that there was no genuine issue of material fact pertaining to the liability of the Wilcoxes on Department's unjust enrichment claim. The trial judge found that by virtue of their participation in the Schubert check-kiting scheme, the Wilcoxes were not innocent investors and the standard for recovery from investors in Ponzi schemes set forth in *Blair* did not apply. The trial court found that the Wilcoxes were unjustly enriched by all monies netted from their association with Schubert's Ponzi and check-kiting schemes. Because there was a genuine issue of material fact pertaining to the *amount* of money that the Wilcoxes netted from the Ponzi scheme, the trial judge left the amount to be determined by jury or non-jury trial.

¶ 12 A pretrial conference order setting the matter for non-jury trial was filed October 22, 2010. Department set out that it was seeking, on the basis of unjust enrichment, to recover fictitious profits in the amount of $509,505.00, plus interest, that Schubert paid to Wilcoxes for which they did not provide reasonably equivalent value. The Wilcoxes asserted no claim for relief and did not assert any affirmative defenses. They maintained only that their net profit was $133,945.00, not $509,505.00.

¶ 13 On November 18, 2010, Department filed a second motion for summary judgment, asserting that further documentation received from the Wilcoxes demonstrated that no issue of material fact remained as to the amount the Wilcoxes netted from Schubert's Ponzi scheme. Department's evidence reflected that the net profit to the Wilcoxes was at least $625,518.00, instead of the $509,505.00 originally calculated, and that five checks, totaling $285,000.00, that the Wilcoxes had used as a setoff in their calculation of net profits were never part of the commingled funds used by Schubert. The Wilcoxes did not respond to the motion.

---

3. The Wilcoxes disputed paragraphs 5, 13, 14 and 16, and part of paragraph 12 of plaintiffs' eighteen undisputed facts. Rule 13(b), Rules for the District Courts, 12 O.S.2001, Ch. 2, App., provides that any party opposing summary judgment must file a concise written statement of the material facts as to which a genuine issue exists and the reasons for denying the motion. In the statement, the adverse party shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials.

4. Counsel for Wilcoxes on appeal is different from their counsel in the trial court.

¶ 14 On December 17, 2010, the trial court entered judgment in favor of Department and against the Wilcoxes in the amount of $509,505.00, plus prejudgment and post-judgment interest and costs. The Wilcoxes were ordered to disgorge and/or repay the sums of money to the Receiver.

¶ 15 The Wilcoxes appealed, raising four issues:

(1) that the trial court exceeded the mandate of this Court in *Oklahoma Department of Securities v. Blair*, 2010 OK 16 [231 P.3d 645];

(2) that the trial court should have taken into account that the Department of Securities was judicially estopped from seeking judgment against the Wilcoxes concerning whether or not they were innocent investors, as that issue had been litigated. The Department of Securities has conceded all 158 investors were innocent investors and had not violated securities laws of the State of Oklahoma;

(3) that the decision of the trial court exceeds the plaintiffs' theory of the case set forth in the pretrial order, which shows the grounds of recovery to be unjust enrichment which was the same grounds on which they previously sought judgment against the Wilcoxes.

(4) that whether the Wilcoxes were not innocent investors should have been subject to a full trial, as there are material issues of fact as to whether the Wilcoxes were anything other than innocent investors in Marsha Schubert's Ponzi scheme.

We granted the appellants' motion to retain the appeal.

¶ 16 The standard of review for summary judgment is *de novo*. Our review is based on the actual record presented to the trial court and the issues actually presented to the trial court. *Culpepper v. Lloyd*, 1978 OK 90 ¶ 6, 583 P.2d 500, 501. An appellate court reviewing a summary judgment cannot take notice of any material that was not properly before the trial court at the time of its rendition. *Frey v. Independence Fire & Casualty Co.*, 1985 OK 25 ¶ 6, 698 P.2d 17, 20.

¶ 17 The first three issues in the appellants' petition in error were not raised in the trial court, and will not be heard for the first time by this Court on appeal.[5] The Wilcoxes never argued before the trial court that the Department was judicially estopped from adjudicating whether or not they were innocent investors entitled to equitable relief, and they never argued that to do so would exceeded the mandate of *Blair*. In the trial court, the Wilcoxes argued that whether they were innocent investors presented a *question of fact* that should not be determined on summary judgment. Likewise, they argued before the trial court that a question of fact existed as to whether their net profit calculation was unreasonable under *Blair*'s standard of recovery. The Wilcoxes never raised an issue in the trial court regarding the plaintiffs' theory of recovery based on unjust enrichment. Where not properly presented in the trial proceedings or in motion for new trial, issues not properly presented to the trial court cannot be considered by this Court on appeal. *Steiger v. City National Bank of Tulsa*, 1967 OK 41, 424 P.2d 69, 72.

¶ 18 We turn to appellants' remaining issue, that their status an innocent or non-innocent investors should have been subject to a full trial because there are material issues of fact. Our de novo review of the record presented to the trial court does not support appellants' assertion that there are material facts remaining in dispute regarding their investor status. All material facts set forth in the statement of the moving party which are supported by admissible evidence are deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the adverse party which is supported by admissible evidence. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by Supreme Court). When evidence is presented showing the existence of uncontroverted material facts, the burden shifts to the opposing party to identify those material

---

5. Errors that could have been raised in the trial court may not be raised for the first time in the appellate court. *Arkansas Louisiana Gas Co. v. Cable*, 1978 OK 133, 585 P.2d 1113, 1116, citing 12 O.S. 992.

facts he or she alleges remain in dispute and provide supportive evidentiary materials justifying trial on the issue. *Reeds v. Walker*, 2006 OK 43 ¶ 32, 157 P.3d 100, 116.

■ ¶ 19 In attempting to show the existence of a question that must be tried, the party may not rely on bald contentions that facts exist to defeat the motion. *Roberson v. Waltner*, 2005 OK CIV APP 15 ¶ 8, 108 P.3d 567, 569. We said, in *Runyon v. Reid*, 1973 OK 25 ¶ 14, 510 P.2d 943, 951:

"When on the basis of established facts the plaintiff is entitled to summary judgment as a matter of law, the defendant contending and arguing that there is a genuine issue of material fact cannot and will not make it so," citing *Aktiengesellschaft Der Harlander, etc. v. Lawrence Walker Cotton* [60 N.M. 154], 288 P.2d 691 (N.M.1955).

¶ 20 Department offered admissible evidence that the Wilcoxes were not "innocent investors" or "innocent victims" of the Ponzi scheme, but were in fact partners with Schubert whose bank accounts were actively used in Schubert's check-kiting scheme. The Wilcoxes did not deny the existence of or their active participation in Schubert's check-kiting scheme. The only evidence submitted by the Wilcoxes in denial of the partnership was their virtually identical self-serving affidavits.[6] Department refuted Wilcoxes' denial of partnership by submitting the Schedule K-1 partnership returns they received from Schubert and a letter in which Marvin Wilcox admitted the partnership with Schubert. The Wilcoxes never sought to offer additional evidence in the trial court on the issue of their status as innocent investors.

¶ 21 It stands uncontroverted that the Wilcoxes' bank accounts were used in furtherance of Schubert's check-kiting scheme to create the "float" used by Schubert to pay purported investment returns. The Wilcoxes did not dispute Department's evidence of the numerous transactions between their accounts, nor the more than seventy-seven million dollars in deposits to Schubert from the Wilcoxes. They admitted receiving $77,-583.050.00 over the course of their dealings with Schubert. The Wilcoxes produced no evidence of the existence of a legitimate day trading account. The evidence presented by Department placed the burden on the Wilcoxes to come forward with evidence to demonstrate the existence of a question as to whether they were innocent investors entitled to the equitable relief provided by *Blair*. Their bald assertion that they were not aware of the existence of a Ponzi scheme is insufficient. The evidentiary material provided by the Wilcoxes failed to raise a dispute on this issue and did not meet their burden to overcome the motion for summary judgment.

¶ 22 Rule 13(e), Rules for the District Courts, provides that if the court finds that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for that party. In this case, the trial court determined that there was no dispute as to the material fact that the Wilcoxes were not "innocent" investors entitled to the equitable treatment provided to innocent investors in *Blair*. In *Blair*, we held that the district court had jurisdiction to determine equitable claims to ownership of funds that were part of the Ponzi scheme. The trial court in this case determined that it would be inequitable to allow the Wilcoxes to keep any of their profits from the Ponzi scheme. Having reviewed the evidentiary materials presented to the trial court, we find that there is no dispute of material fact justifying trial on this issue.

---

**6.** Marvin Wilcox's affidavit provides, in pertinent part:
1. I, Marvin Wilcox, have personal knowledge of the facts and matters set forth below.
2. Pam Wilcox is my spouse, and we filed joint tax returns for the years 2002 and 2003.
3. I am unaware as to why Schubert and Associates was listed in our 2002 and 2003 tax returns as a partnership, and I have never received any K-1's from Schubert and Associates.
4. My spouse and I received $77,583.050.00 over the course of our dealings with Schubert and Associates, for a net profit of $133,945.00.
5. Throughout my dealings with Schubert and Associates, I was never aware of the existence of a Ponzi scheme.
6. I do not recall whether I contracted with Schubert for a particular interest rate.

¶23 As a final matter, the parties have filed motions in the appeal that have not been ruled on. Appellants filed a motion for additional briefing on the issues of judicial estoppel and exceeding the mandate of *Blair*. Department filed a motion to dismiss the appeal on the grounds of waiver because the Wilcoxes failed to raise or present their issues to the trial court. The Wilcoxes' response did not address waiver, but instead argued the merits of the issues. Department then filed a motion to amend the record on appeal to incorporate three documents that they deemed necessary to rebut new issues raised in the response. Based on our holding in this case, we deny the motion for additional briefing, the motion to supplement the record and the motion to dismiss.

¶24 ALL JUSTICES CONCUR.