BRISCOE, Chief Judge,
dissenting.
I respectfully dissent. In my view, the majority errs in two important respects. First, and most significantly, the majority misinterprets 11 U.S.C. § 523(a)(19) to render nondischargeable only those debts that arose from the debtor’s personal violation of federal or state securities laws. Nothing in the plain language of § 523(a)(19), particularly when read together with the rest of the statute, supports such an interpretation. Instead, § 523(a)(19) must be read more broadly to encompass not only those debts that arose from the debtor’s own violation of federal or state securities laws, but also those debts that are representative of violations of federal or state securities laws committed by others. Second, the majority fails to recognize that, even under its unduly narrow interpretation of § 523(a)(19), the judgment entered against the Wilcoxes in the Oklahoma state courts is nondischargeable because the Wilcoxes were found to have knowingly participated in violating Oklahoma state securities laws.
As a result of these differences, I would affirm the bankruptcy court’s decision concluding that the Oklahoma state court judgment entered against Mathews was nondischargeable under § 523(a)(19). As for the Wilcoxes, I would remand to the district court with directions to remand the matter to the bankruptcy court for further proceedings. On remand, the bankruptcy court should treat the final judgment entered against the Wilcoxes in state district court as nondischargeable under § 523(a)(19).
I
■ The underlying Ponzi scheme
From approximately May 1992 through October 2004, Martha Schubert, an Oklahoma resident, worked as a registered agent of two registered investment broker-dealers in Oklahoma: AXA Advisors (from 1992 through May 2004) and Wilbanks Securities (from May 2004 to October 2004). As a registered agent, Schubert “plac[ed] investments [for clients] in legitimate accounts with recognized national brokerage houses.” App. at 470. Beginning in or about 2001, Schubert, unbeknownst to AXA Advisors, began engaging in outside securities activities by offering and selling so-called Investment Program Interests to individual clients. “Schubert directed [i]n-vestors to make their checks payable to her personally or to Schubert and Associates,” id. at 262, an unincorporated association, id. at 470. “Schubert did not disclose to [investors how she would invest their money, but generally stated that the money would be used to make trades in option contracts,” and she “promised that the investments were ‘fool proof” and would yield “thirty percent (30%) annual interest.” Id. at 262. Schubert’s program, however, was a sham. To begin with, “[t]he Investment Program Interests were not registered as securities under” *1178 Oklahoma law. Id. Further, “Schubert used new [investor money to pay principal and/or profits to [i]nvestors who had-previously invested.” Id. In short, Schubert’s program was a Ponzi scheme.
“In April of 2004, AXA Advisors conducted an audit on Schubert regarding wire-fund activity involving her customers’ brokerage accounts and deposits from ... Schubert and Associates.” Id. at 261. “In. May of 2004, AXA Advisors permitted Schubert to resign while she was still under investigation.” Id. Following her resignation, Schubert began working for Wil-banks Securities. Schubert continued her fraudulent investment scheme, apparently while working for Wilbanks, until approximately October 2004.
In 2005, Schubert was indicted by a federal grand jury. Schubert subsequently pled guilty to a single count of money laundering and was sentenced to a term of imprisonment of 120 months.

The state lawsuit against certain investors

On May 11, 2005, the Oklahoma Department of Securities (ODS) filed suit against 158 individuals (described in the complaint as “Relief Defendants”), including Robert Mathews and Marvin and Pamela Wilcox, who had invested money with Schubert and in turn “received cash and other property and/or control property that [we]re the proceeds of the unlawful activities of ... Schubert.” Id. at 307. ODS’s complaint alleged that the Relief Defendants “received ... over $6,000,000 of the $9,000,000 lost in th[e] Ponzi scheme.” Id. at 314. ODS asserted claims against the Relief Defendants under the Oklahoma Uniform Securities Act, Okla. Stat. tit. 71 § 1-101 et seq., for unjust enrichment.
ODS moved for summary judgment, alleging that each Relief Defendant “opened an investment account with AXA Advisors, with Schubert acting as investment advis- or, and transacted certain purchases, sales and withdrawals in those accounts,” id. at 473, and that “all monies received into [those] AXA accounts were accounted for in statements provided by AXA, but that each [Relief Defendant] also received additional sums from commingled Schubert bank accounts without supporting statements,” id.
On December 12, 2006, the state district court granted ODS’s, motion for summary judgment against Mathews and entered judgment against Mathews and in favor of the ODS. Less than two months later, on February 5, 2007, the state district court granted ODS’s motion for summary judgment against the Wilcoxes and entered judgment against them and in favor of ODS. In each instance, the state district court entered judgment in favor of ODS in an amount equal to the additional sums received by Mathews and the Wilcoxes.
Some of the defendants in the state court action against whom judgments were entered, including the Wilcoxes but not Mathews, appealed to the Oklahoma Court of Civil Appeals (OCCVA). On April 13, 2007, the OCCVA “h[e]ld that, under [Oklahoma] laws, disgorgement may be ordered in securities cases against those other than actual violators of the Act, where such relief is appropriate under the facts and circumstances of the case,” and that the ODS “[wa]s the proper party to bring such an action.” Id. at 477. In turn, the OCCVA held that the state district court correctly granted summary judgment in favor of ODS on its unjust enrichment claims. The OCCVA noted that, aside from the amount each Relief Defendant deposited into his or her AXA account, each “received sums from Schubert which were purportedly profits from option contracts or day trading in securities.” Id. at 487. However, the OCCVA noted, “[i]t [wa]s uncontroverted that such profits did *1179 not exist and the additional sums [the Relief Defendants] received were instead fraudulently obtained from other investors with Schubert and Associates.” Id. In short, the OCCVA concluded, the Relief Defendants were “in possession of funds which, in equity and good conscience, belonged] to other investors.” Id.

The federal court proceedings

In 2007, following issuance of the OC-CVA’s decision, Mathews and the Wilcoxes filed for Chapter 7 bankruptcy. The ODS responded by filing adversary proceedings against Mathews and the Wilcoxes seeking “exceptions to the[ir] ... discharges for fraud pursuant to 11 U.S.C. § 528(a)(2) and securities-related fraud pursuant to § 523(a)(19).” Id. at 571. In support, the ODS alleged that Schubert’s Ponzi scheme included a “check exchange scheme,” id., under which “Schubert would use other people’s checking accounts to ‘float’ payments to investors as their purported profits.” Id. at 571-72. The ODS further alleged that Mathews and the Wilcoxes “knowingly participated in the check exchange scheme by allowing Schubert to funnel money through their checking accounts,” and thereby “materially aided Schubert in her securities fraud scheme.” Id. at 572. Mathews and the Wilcoxes denied those allegations.
On December 12, 2008, the bankruptcy court granted summary judgment in favor of the ODS. In doing so, the bankruptcy court noted that the exception to dis-chargeability set forth in 11 U.S.C. § 523(a)(19) “has two elements: (1) a debt that is for a violation of state securities laws; and (2) that debt results from a judgment or order in a federal or state judicial proceeding.” Id. at 574. The bankruptcy court in turn concluded that these elements were satisfied with respect to Mathews and the Wilcoxes:
A review of the opinion of the [OCCVA] makes clear that the disgorgement judgment against the Defendants was made pursuant to Oklahoma securities law. Although the Defendants strongly argue they were innocents caught in the web of Schubert’s fraudulent scheme, it is of no legal consequence since Oklahoma law does not require wrongful intent. The Oklahoma Court of Civil Appeals explained, “We agree with the assertion by the Department ... and Receiver that Appellants’ ... defense of being ‘innocent victims’ has no merit under the facts here. Appellants are in possession of funds which, in equity and good conscience, belong to other investors.” Thus, the Plaintiff has clearly established that the debt is for a violation of OMahoma securities law.
Id. at 575 (citation omitted).
Mathews and the Wilcoxes appealed from the bankruptcy court’s decision and elected to have their appeals “heard by the United States District Court, Western District of Oklahoma.” Id. at 586. Mathews and the Wilcoxes argued, in pertinent part, that “the Bankruptcy Court erred because § 523(a)(19) is limited to judgments resulting from the debtor’s direct violation of the state securities law.” Id. at 58. On February 10, 2010, the district court, reviewing the bankruptcy court’s legal conclusions de novo, granted summary judgment in favor of the ODS and against Mathews and the Wilcoxes.
On March 5, 2010, Mathews and the Wilcoxes filed notices of appeal from the district court’s judgment.

The Oklahoma Supreme Court’s Blair decision

During the pendency of the federal court proceedings, the defendants in the Oklahoma state proceedings who had unsuccessfully appealed to the OCCVA, including the Wilcoxes, sought certiorari review in the Oklahoma Supreme Court *1180 (OSC). The OSC granted review and, on February 23, 2010, issued a published decision reversing the OCCVA’s decision (the OCS’s decision was subsequently corrected and reissued on April 6, 2010). Okla. Dep’t of Securities ex rel. Faught v. Blair, 231 P.3d 645 (Okla.2010) (Blair). The OSC held that the ODS “may proceed against the innocent investors to recover unreasonable profits received in excess of their investments in the Ponzi scheme.” Id. at 649 (emphasis in original). Although the OSC “agree[d] with the [ODS] that the nature of the transaction between the Ponzi operator and innocent investor may be inequitable and the innocent investor’s right to the funds becomes merely possessory,” it “disagree[d] that the profit [wa]s, as a matter of law, inequitable and thereby subject to a restitution proceeding.” Id. at 658 (emphasis in original). Instead, the OSC concluded, the ODS “must prove that an innocent investor’s conduct of possessing a Ponzi-scheme profit is, by itself, active wrongdoing or possession against equity and good conscience sufficient to justify a constructive trust imposed by a District Court.” Id. at 659 (emphasis in original). In that regard, the OSC concluded, the ODS “may seek relief against Ponzi investors who received profits that are artificially high dividends,” but may not “seek restitution from innocent Ponzi-scheme investors who received their investment with a reasonable interest thereon.” Id. at 663.
Applying its holdings to the facts presented, the OSC concluded that the state district court improperly granted summary judgment “based upon the principle that a profit to a Ponzi-scheme investor is, as a matter of law, unjust enrichment, and subject to an action by the [ODS] for restitution.” Id. at 669. Accordingly, the OSC remanded the action to the state district court “for further proceedings consistent with [the OSC’s] opinion.” Id. at 670.

Postr-Blair proceedings

On remand from the OSC, the state district court, on October 18, 2010, granted partial summary judgment in favor of the ODS and against the Wilcoxes “on the issue of liability relative to [ODS’s] cause of action for unjust enrichment.” Aplee.’s Supp. Br., Exh. 1 at 2. In doing so, the state district court concluded that “by virtue of their participation in the Schubert check-kiting scheme, the Wilcoxes were not innocent investors and the standard for recovery from investors in Ponzi schemes set forth in Blair did not apply.” Okla. Dep’t of Sec. v. Wilcox, 267 P.3d 106, 109 (Okla.2011).
The ODS subsequently “filed a second motion for summary judgment, asserting that further documentation received from the Wilcoxes demonstrated that no issue of material fact remained as to the amount the Wilcoxes netted from Schubert’s Ponzi scheme.” Id. “The Wilcoxes did not respond to the motion.” Id. Consequently, on December 17, 2010, the state district court “entered judgment in favor of [the ODS] and against the Wilcoxes in the amount of $509,505.00, plus prejudgment and post-judgment interest and costs.” Id. at 110.
The Wilcoxes appealed. On October 11, 2011, the OSC affirmed the judgment entered by the state district court, concluding “that there [wa]s no dispute of material fact justifying trial on th[e] issue” of whether the Wilcoxes were “ ‘innocent’ investors entitled to the equitable treatment provided to innocent investors in Blair.” Id. at 111. In reaching this conclusion, the OSC noted that the ODS “offered admissible evidence that the Wilcoxes were not ‘innocent investors’ or ‘innocent victims’ of the Ponzi scheme, but were in fact partners with Schubert whose bank accounts were actively used in Schubert’s check-kiting scheme.” Id. The OSC further not *1181 ed that “[t]he Wilcoxes did not deny the existence of or their active participation in Schubert’s check-kiting scheme.” Id.
II
“Our review of the bankruptcy court’s decision is governed by the same standards of review that govern the district court’s review of the bankruptcy court.” In re Roser, 613 F.3d 1240, 1243 (10th Cir.2010) (internal quotation marks omitted). “Because this case presents no disputed factual issues but only matters of law, our review is de novo.” Id.
Section 523(a)(19) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy discharge:
does not discharge an individual debtor from any debt—
(19) that—
(A) is for—
(i)the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws ...; and
(B) results, before, on, or after the date on which the [bankruptcy] petition was filed, from—
(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
(ii) any settlement agreement entered into by the debtor; or
(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.
11 U.S.C. § 523(a)(19).
The majority summarily concludes that, under “the plain language of th[is] statute,” “[t]he judgments at issue are not ‘for a violation’ of securities laws but for unjust enrichment resulting from someone else’s violation of those statutes.” Maj. Op. at 1175. The majority also states, in a related footnote, that the ODS “chose not to prosecute Mathews or the Wilcoxes for securities violations.” Id. at 1174 n. 5. Thus, in sum, the majority apparently reads § 523(a)(19) as requiring the debt at issue to have arisen from the debtor’s personal violation of federal or state securities laws.
In my view, this is an unduly restrictive reading of § 523(a)(19). “Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.” Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (internal quotation marks omitted). As noted, § 523(a)(19) prohibits, in pertinent part, the discharge in bankruptcy of “any debt ... that ... is for ... the violation of ... any of the State securities laws.” 11 U.S.C. § 523(a)(19). The word “debt” “is defined in the [Bankruptcy] Code as ‘liability on a claim,’ § 101(12), a ‘claim’ is defined ... as a ‘right to payment,’ § 101(5)(A), and a ‘right to payment,’ [the Supreme Court has] said, ‘is nothing more nor less than an enforceable obligation.’ ” Cohen v. de la Cruz, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (quoting Penn. Dep’t of Pub. Welfare v. Davenport, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). In turn, the word “for” means “Representing” or “as representative of,” Oxford English Dictionary (2d ed.1989) (online *1182 version); see Cohen, 523 U.S. at 220-21, 118 S.Ct. 1212 (concluding that the phrase “debt for,” as used in § 523(a), “means ‘debt arising from’ or ‘debt on account of ”), and the word “violation” refers to an “[i]nfringement,” “breach,” or “flagrant disregard or non-observance,” Oxford English Dictionary (2d ed.1989). Considered together, § 523(a)(19) thus refers to every enforceable obligation of the debtor to another that represents or is representative of an infringement or breach of “any of the Federal securities laws ..., any of the State securities laws, or any regulation or order issued under such Federal or State securities laws.” See generally Cohen, 523 U.S. at 220,118 S.Ct. 1212 (concluding that “ ‘debt for’ is used throughout [§ 523(a) ] to mean ‘debt as a result of,’ ‘debt with respect to,’ ‘debt by reason of,’ and the like.”).
As so defined, nothing in the statutory language of § 523(a)(19) limits the scope of nondischargeable obligations to those arising out of federal or state securities violations committed by the debtor. More specifically, it is entirely possible for an obligation — in particular a court judgment for unjust enrichment — to represent or be representative of a federal or state securities violation committed by someone other than the person against whom the judgment was entered. Had Congress intended to limit the scope of § 523(a)(19) to only those obligations arising out of the debtor’s personal violation of federal or state securities laws, it would have said so. Indeed, a review of some of § 523(a)’s other subsections confirms this. For example, § 523(a)(6) renders nondischargeable any debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.” 11 U.S.C. § 523(a)(6) (emphasis added). Similarly, § 523(a)(9) renders nondischargeable any debt “for death or personal injury caused by the debtor’s operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.” 11 U.S.C. § 523(a)(9) (emphasis added). Because Congress did not include any such limiting language in § 523(a)(19), the only reasonable conclusion is that Congress intended § 523(a)(19) to be broad enough to encompass circumstances in which the debtor personally violated federal or state securities laws, as well as circumstances in which a third party has violated federal or state securities laws and the debtor, for one reason or another, has been held financially responsible for that violation.
The majority, obviously finding no support for its interpretation in the language of § 523(a)(19) itself, cites to the legislative history. To the extent the legislative history is relevant, it is as, if not more, supportive of my interpretation than the majority’s. Subsection (a)(19) was added to § 523 in 2002 by the Sarbanes-Oxley Act of 2002, Pub.L. No. 107-204, § 803(3), 116 Stat. 745.[1] The overall focus of that Act, which was introduced in the wake of the Enron and other corporate scandals, was to “restore [corporate] accountability” by “providing] prosecutors with new and better tools to effectively prosecute and punish those who defraud our Nation’s investors,” “providing] tools [to] improve the ability of investigators and regulators to collect and preserve evidence which proves fraud,” and “protect[ing] victims’ rights to recover from those who have cheated them.” 148 Cong. Rec. S1783-01, S1786 (2002). As I see it, it is entirely consistent with the Act to treat as nondischargeable any debts that arose from violations of *1183 federal or state securities laws, regardless of whether or not the debtor was personally involved in those violations. Indeed, to hold otherwise would result in a windfall to the debtor. And, although there are certainly comments in the legislative history indicating that Congress’s prime focus in enacting § 523(a)(19) was to prevent “corporate officers” from “be[ing] able to misuse the bankruptcy laws to discharge liabilities based upon securities fraud,” 148 Cong. Rec. H4683-01, H4685 (2002), nothing in the legislative history or, more importantly, the text of the statute, indicates that Congress intended to allow so-called innocent investors to effectively benefit from those, or similar, securities violations.
Lastly, the majority cites with approval the Ninth Circuit’s decision in Sherman v. SEC, 658 F.3d 1009 (9th Cir.2011). The panel in Sherman, in a 2-to-l decision, held “that § 523(a)(19) only prevents the discharge of a debt for a securities violation when the debtor is responsible for that violation.” 658 F.3d at 1012. In support, the panel majority in Sherman relied not on § 523(a)(19)’s “text and structure,” which it found inconclusive, but rather on a combination of “a rule of construction interpreting exceptions to discharge narrowly,” id. at 1015, and what it characterized as “modest additional support for [its] interpretation” in “[t]he legislative history of § 523(a)(19),” id. at 1016.
In my view, the dissenting opinion in Sherman is substantially more persuasive and properly takes the Sherman majority to task for “disregarding] the plain meaning of ... § 523(a)(19).” Id. at 1019. As the dissent correctly notes, a debt can be “for the violation of any of the Federal securities laws,” § 523(a)(19)(A)(i), “when the debtor [personally] committed the violation” or “when it is an obligation to return the proceeds of the violation being held in trust for the wrongdoer,” 658 F.3d at 1019 (emphasis omitted). By construing § 523(a)(19) narrowly to encompass only the first of these possibilities, the panel majority in Sherman “misconstrues the plain text [of the statute], distorts the statutory structure and actually defeats the proper objectives of bankruptcy policy and the securities laws.” Id. at 1029.
Having outlined what I believe to be the proper interpretation of § 523(a)(19), the next task is to apply that interpretation of § 523(a)(19) to the facts presented in these consolidated appeals. Turning first to Mathews’ appeal, it is undisputed that the state district court entered judgment against him and in favor of the ODS for unjust enrichment under the Oklahoma Uniform Securities Act, and that Mathews did not appeal from this judgment. Although the state district court did not make any findings that Mathews was directly involved in the underlying violations of Oklahoma state securities laws, it is beyond dispute that the judgment entered against Mathews was intended to be representative of the infringement of Oklahoma state securities laws committed by Schubert.[2] Consequently, that judgment falls within the scope of § 523(a)(19) and is not dischargeable in Mathews’ bankruptcy proceedings.
The Wilcoxes’ appeal presents a different situation. The judgment that was originally entered against the Wilcoxes was reversed by the OSC in Blair and remanded to the state district court for further proceedings. On remand, the state district court granted summary judgment in favor of the ODS, finding that the *1184 undisputed evidence established “that by-virtue of their participation in the Schubert check-kiting scheme, the Wilcoxes were not innocent investors.” Wilcox, 267 P.3d at 109. The state district court further “entered judgment in favor of [ODS] and against the Wilcoxes in the amount of $509,505.00, plus prejudgment and post-judgment interests and costs.” Id. at 110. On appeal, the OSC affirmed that judgment, noting, in pertinent part, that “[t]he Wilcoxes did not deny the existence of or their active participation in Schubert’s check-kiting scheme.” Id. at 111.
Accordingly, I believe the appropriate course of action is to remand the Wilcoxes’ appeal with directions to the bankruptcy court to treat the judgment entered in favor of the ODS and against the Wilcoxes as nondischargeable under § 523(a)(19).[3]

. The Act was also known in the Senate as the Public Company Accounting Reform and Investor Protection Act, and in the House as the Corporate and Criminal Fraud Accountability Act of 2002.

. To be sure, the judgment against Mathews was entered prior to, and thus is not consistent with, the OSC’s decision in Blair. But, as noted, Mathews did not appeal from the judgment, and there is no indication in the record on appeal that he has sought, let alone been granted, relief from the judgment based upon Blair.

. The judgment entered against the Wilcoxes should also, in my view, be considered non-dischargeable under the majority’s narrow interpretation of § 523(a)(19), given the state district court’s finding regarding the Wil-coxes’ knowing involvement in Schubert’s criminal scheme. The same would also be true under the Sherman majority’s similarly narrow interpretation of § 523(a)(19). See 658 F.3d at 1019 (holding that “§ 523(a)(19) prevents the discharge of debts for securities-related wrongdoings ... where the debtor is responsible for that wrongdoing”).