2014 OK CIV APP 107

Shawna Rene **ABRAHAM**, as widow and Personal Representative of the Estate of Robert Abraham, deceased, Plaintiff/Appellant,

v.

**TRAIL LANES, INC.,** an Oklahoma corporation, dba "Oakwood Bowl," an unincorporated association, Defendant/Appellee,

and

The **300 Club,** an Oklahoma corporation, Dan F. Healy, individually and dba The Mine Company, an unincorporated Oklahoma association, and John Doe and Jane Doe, presently unknown, Defendants.

No. 112,850.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 19, 2014.

Robert J. Wonnell, Joshua L. Mareschal, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for Defendant/Appellee.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant Shawna Rene Abraham, as widow and Personal Representative of the Estate of Robert Abraham, deceased, appeals from summary judgment granted to Defendant/Appellee Trail Lanes, Inc., dba Oakwood Bowl. The trial court docket sheet indicates Abraham dismissed her claims against the remaining defendants. Abraham filed this wrongful death action after her husband was murdered in the restroom at a bar in Trail Lanes' bowling alley. The record shows no dispute of material fact and Trail Lanes was entitled to judgment as a matter of law.[1] We affirm.

¶ 2 In her First Amended Petition, filed April 8, 2013, Abraham alleged that Trail Lanes operates a bowling alley named Oakwood Bowl in Enid and that inside the bowling alley is a tavern where food and intoxicating beverages are sold. Abraham alleged that Defendant The Mine Company owned the tavern, which operated under the name The 300 Club, and that Defendant Healy is the principal of The Mine Company.[2] Abraham alleged that her husband Robert Abraham (Decedent) was beaten to death in the men's restroom of the tavern on February 14, 2012. Abraham asserted that Healy and the bartender owed a duty to warn Decedent after the assailant announced his intent to assault him. Abraham asserted that all the defendants were negligent and that all the defendants were in a joint enterprise in running the bowling alley and were all therefore jointly liable. Abraham asserted that Trail Lanes was the landlord and therefore had a duty to exercise reasonable care to maintain safe premises.

¶ 3 Abraham alleged the defendants all breached the duty of care by failing to warn

Steven D. Singer, Enid, Oklahoma, for Plaintiff/Appellant.

1. The summary judgment record filed by Abraham is bound only by two plastic zip ties, it contains no tabs identifying the documents included, as required by Oklahoma Supreme Court Rule 1.36(d)(2), and the evidentiary material attached to Abraham's response to the summary judgment motion is not tabbed, identified by exhibit labels, or separated in any other way.

2. Although not relevant to the outcome here, the record indicates that at the time of the assault at issue here, the tavern operated under the name The Mining Company.

Decedent of impending danger, by permitting the assailant to enter and remain on the premises when they knew of his prior violent actions towards patrons, by not immediately removing the assailant from the premises, by serving intoxicating beverages to the assailant when they knew of his propensity to become unruly and violent, by failing to aid Decedent during the attack, by failing to provide adequate security, and by failing to timely call police to intervene. Abraham asserted these breaches were the proximate cause of Decedent's death. Abraham asserted the defendants were liable also for gross negligence, negligent false imprisonment, professional negligence for failure to render aid, and for maintaining a public nuisance. Abraham sought damages for medical expenses, pain and suffering, funeral expenses, loss of consortium, as well as punitive damages.

¶4 In its Answer, Trail Lanes admitted that Healy was the owner of The Mining Company and leased certain and exclusive

premises at the bowling alley, at which food and intoxicating beverages were sold, and that Decedent was assaulted there by a person known to him but unaffiliated with Trail Lanes. Trail Lanes denied it was part of a joint enterprise or profit sharing arrangement and denied it was jointly liable for any acts of the other Defendants. Trail Lanes denied it committed negligence or caused any damages suffered by Abraham. As affirmative defenses, Trail Lanes asserted Abraham had failed to state a claim against it, that her damages were caused by third parties for which Trail Lanes was not responsible, Decedent's negligence exceeded that of any Defendant, Decedent assumed the risk of harm, and Abraham's damages were proximately caused by the assailant and Trail Lanes had no knowledge of any threat or danger presented by the assailant.

¶5 Trail Lanes filed its Motion for Summary Judgment March 5, 2014. Trail Lanes included 28 statements of undisputed material facts.[3] Trail Lanes argued it did not owe

---

3. Trail Lanes asserted there was no dispute that: 1) Jim Tate testified as Trail Lanes' corporate representative; 2) Tate is Trail Lanes' manager and runs it on a day-to-day basis; 3) Tate is Trail Lanes' Secretary; 4) Trail Lanes leased the bar/tavern area to The Mine Company at the time of Decedent's murder; 5) the restroom in which Decedent was murdered services the bowling alley and The Mine Club, but when the bowling alley is closed, the restroom is strictly The Mine Company's restroom; 6) when the bowling alley is closed, the door between the bowling alley and the restroom's hallway is locked and the entrance between the bowling alley and The Mine Company is locked so that bar patrons cannot get into the bowling alley; 7) the bowling alley was closed for business at the time of the murder; 8) the door between the bowling alley and the restroom hallway was locked at the time of the murder; 9) the bowling alley's owners and managers did not know Grady Lewallen (the assailant), had never met him and had never seen his name before the murder; 10) Lewallen was a patron of The Mine Company and bowling alley representatives had never seen Lewallen in the bowling alley; 11) Lewallen was never barred from the bowling alley because bowling alley representatives did not know who he was; 12) Decedent did not go into the bowling alley on the night of his murder, he went to The Mine Company and was a customer of The Mine Company; 13) Decedent told Plaintiff Shawna Abraham he was going to have a beer at The Mine Company before they met up later on the evening of February 14, 2012 for dinner; 14) At the time Lewallen entered the bowling alley on the night of the murder, Decedent had already been attacked; 15) no representative of Trail Lanes/Oakwood Bowl knew about the previous altercation between Lewallen and Decedent at The Mine Company three months before the murder and Abraham has no evidence that any representative of Trail Lanes/Oakwood Bowl knew about the previous altercation between Lewallen and Decedent; 16) Abraham has no evidence that any representative of Trail Lanes/Oakwood Bowl knew about prior animosity Lewallen had toward Decedent or knew about Lewallen's propensity to be violent; 17) Abraham has no evidence that any representative of Trail Lanes/Oakwood Bowl knew Lewallen was approaching Decedent from behind before he was attacked; 18) Abraham had gone to Trail Lanes/Oakwood Bowl for a couple of years before the murder and she felt safe at the bowling alley; 19) Abraham had never seen a physical fight at Trail Lanes/Oakwood Bowl prior to Decedent's murder; 20) prior to Decedent's murder, neither Tate nor any other representative of Trail Lanes/Oakwood Bowl was aware of any fights in any restroom at the entire bowling complex, including the restroom in which Decedent was murdered; 21) prior to Decedent's murder, neither Tate nor any other representative of Trail Lanes/Oakwood Bowl was aware of any fights in any restroom at the entire bowling complex, including the restroom in which Decedent was murdered, while the bowling alley and the bar were open for business; 22) Det. John Robinson was the lead detective for the murder; 23) Det. Robinson testified at Lewallen's trial and Lewallen was convicted of second

a duty of care to Decedent as a matter of law. It argued that an invitor owes no duty to protect invitees from criminal acts of third parties unless the invitor had notice or had knowledge of a danger in time to remove it or give warning. Trail Lanes asserted it had no knowledge of Lewallen, who was a patron of The Mine Club as was Decedent, and Trail Lanes was closed for business at the time of the attack. Trail Lanes next contended that because there was no dispute that The Mine Club had exclusive control over the restroom at the time of the attack and because Trail Lanes had no knowledge of Lewallen or the danger he presented, Trail Lanes owed no duty to warn or protect Decedent. Trail Lanes argued that some of Abraham's factual allegations made in her First Amended Petition failed for lack of evidentiary support, including her assertion that employees of

The Mine Club saw Lewallen pursue Decedent from behind but failed to·stop him. Trail Lanes next argued that Lewallen's criminal act was a supervening cause of Abraham's injury. Trail Lanes argued it did not falsely imprison Decedent as a matter of law because Decedent was not in the bowling alley on the night in question and the bowling alley was closed for business at the time of the attack. Finally, Trail Lanes asserted Abraham could not prove a claim for public nuisance as a matter of law.

¶6 In her response, Abraham admitted Trail Lanes' facts 1, 3, 9, 13, 16, 17, 18, 19, 22, 23, and 24. Abraham admitted in part and disputed in part Trail Lanes' facts 2, 4, 5, 10, and 26.[4] Abraham disputed Trail Lanes' remaining statements of fact, numbers 6, 7, 8, 11, 12, 14, 15, 20, 21, 25, 27, and 28.[5] Abra-

degree murder; 24) based on Det. Robinson's investigation, Lewallen was in the subject restroom first, left the stall he was occupying, saw Decedent at a urinal and attacked him from behind; 25) based on Det. Robinson's investigation, no one knew Lewallen was going to attack Abraham before the attack; 26) based on Det. Robinson's investigation, the attack was very brief; 27) based on Det. Robinson's investigation, Decedent's murder was the result of a private dispute that had nothing to do with Trail Lanes/Oakwood Bowl or the bar; and 28) based on his training and experience, Dr. Robinson did not believe Lewallen had been drinking before the murder or that the service of alcohol had anything to do with the murder.

4. Abraham's response to fact 2 includes 22 numbered paragraphs about the amount of control Trail Lanes had over the tavern. Abraham cited an affidavit of a criminologist for many of her claims that Trail Lanes should have known about criminal activity. Abraham also attached over 100 pages of Enid Police Department "calls for service" records, many of which are dated after the assault in this case, fail to identify the location of the reported activity, and/or show no criminal activity at the bowling alley (for example, one report suggests police were called to the bowling alley where two people reported trash being dumped at their home, one indicates a child was reported lost at the bowling alley but was found outside, one indicates a woman called police from the bowling alley's address seeking help after a domestic incident at her home, and one indicates a child was at the bowling alley without a parent). Abraham failed to cite to particular pages of the police records showing actual criminal conduct at the bowling alley. As to fact 4, Abraham asserted the lease did not state that the restroom was the responsibility of the tavern when the bowling alley was closed. Abra-

ham admitted fact 10, but urged that the tavern's knowledge of the prior altercation between Lewallen and Decedent should be imputed to Trail Lanes. As to fact 26, Abraham argued that even· if the attack was brief, it was foreseeable.

5. Abraham disputed fact 6 by noting deposition testimony that after the attack, Lewallen exited through a door between the restroom and the bowling alley that was supposed to be locked but was not. She claimed that this fact was irrelevant because the lease did not provide that the door between the restroom and the bowling alley was to remain locked when the bowling alley was closed. Abraham disputed fact 7, that the bowling alley was closed at the time of the attack, by asserting that the bowling alley manager remained on the premises vacuuming the carpet and that the door between the restroom and the bowling alley was unlocked. Abraham asserted this fact was not relevant, based on her contention Trail Lanes was responsible for any acts anywhere on the premises. Abraham similarly disputed fact 8 based on testimony Lewallen came through the door between the restroom and bowling alley after the attack, but again asserted it was not relevant. Abraham disputed fact 11 by contending that tavern employees knew Lewallen and Decedent had been in an altercation at the tavern three months earlier, but she argued this fact was also not relevant. Abraham disputed fact 12 by asserting that tavern customers were invitees of the whole Trail Lanes building and that this fact was irrelevant. Abraham disputed fact 14, but she did not cite evidence to support her dispute. Abraham asserted fact 15 was irrelevant. Abraham disputed fact 20 by contending that Trail Lanes was negligent if it was unaware of "dozens and dozens of police reports reporting violence at the bowling facility." As noted above, the police records

ham asserted Trail Lanes was independently liable because of the amount of control it maintained over the tavern. She argued that Trail Lanes owed a duty of care to Decedent as a business invitee and that the murder was foreseeable based on past criminal activity at the facility.

¶ 7 The trial court granted summary judgment to Trail Lanes April 2, 2014. Abraham appeals. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2011, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* We review the evidence *de novo,* in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275. All material facts set forth in the statement of the moving party which are supported by admissible evidence are deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the adverse party which is supported by admissible evidence. *Oklahoma Dept. of Securities v. Wilcox,* 2011 OK 82, ¶ 18, 267 P.3d 106, 110.

¶ 8 In her Petition in Error, Abraham argues two material facts are in dispute: whether Trail Lanes owed a duty of care to a customer using its restroom and whether the assault was foreseeable to Trail Lanes. Duty is an essential element of negligence and whether a defendant owed a duty of care to the plaintiff is a question of law. *First Nat. Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, ¶ 17, 54 P.3d 100. An invitor has a duty to exercise reasonable care to prevent injury to a business invitee. *Taylor v. Hynson,* 1993 OK 93, ¶ 16, 856 P.2d 278, 281. However, an invitor does not have a duty to protect invitees from criminal acts by third persons, unless the invitor knows or has reason to know "that the acts of the third person are occurring, or are about to occur." *Id.* at ¶ 17.

¶ 9 In *Taylor, supra,* the Oklahoma Supreme Court adopted § 344 of The Restatement (Second) of Torts, and more recently, the Oklahoma Supreme Court has adopted all of Comment f to that section, in *Bray v. St. John Health System, Inc.,* 2008 OK 51, 187 P.3d 721. That section provides, in pertinent part:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comments

* * *

d. Reasonable care. A public utility or other possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons, or the acts of animals. He is, however, under a duty to exercise reasonable care to give them protection. In many cases a warning is sufficient care if the possessor reasonably believes that it will be enough to enable the visitor to avoid the harm, or protect himself against it. There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons, or animals, may conduct themselves in a

---

attached do not support this claim by Abraham. Abraham disputed fact 21 with the same argument. Abraham disputed fact 25 by referencing her lengthy response to fact 2, but without citing

to evidentiary materials showing a dispute of fact. Abraham disputed facts 27 and 28 with the same reference to her dispute of fact 2.

manner which will endanger the safety of the visitor.

* * *

f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Trail Lanes was closed for the evening and its bowling facility was closed off from the tavern for the night when the attack occurred. The record does not create a question that Trail Lanes knew the attack was occurring or about the occur.[6]

¶ 10 The effect of the remainder of comment f, however, is that a duty of care to warn or protect business invitees from criminal acts of third parties may be shown where such conduct was foreseeable based on past experience. *Bray, supra.* Abraham relies on her attached police "calls for service" to create a question of fact on whether Trail Lanes' past experience made Decedent's murder foreseeable. As noted above, the bundle of "calls for service" are not arranged in any apparent order, are not tabbed, many either show no crime, show no location, or are dated after the assault at issue here. Abraham has failed to cite to specific portions of those documents which might support her claim that "dozens and dozens" of crimes happened at the bowling alley, and we find those documents do not show a question of fact on foreseeability before the assault on Decedent.

¶ 11 The prior altercation between Lewallen and Decedent also fails to show the murderous attack was foreseeable to Trail Lanes because Abraham has failed to attach any evidentiary materials disputing Trail Lanes' manager's deposition testimony that Trail Lanes had no knowledge of the prior attack or even of the existence of Lewallen. The testimony from witnesses indicates that three months earlier, Decedent said something in the tavern which angered Lewallen and tavern employees escorted Decedent to his car and asked him not to return. At some point, Decedent obtained permission from the tavern to return. Abraham has not attached any admissible evidence showing any Trail Lanes employee was on notice of that altercation or that it would lead to a violent assault three months later.

¶ 12 Abraham charges that Trail Lanes, as the property owner and landlord to The Mine Company, stands in the shoes of The Mine Company and therefore is charged with its knowledge of the prior altercation. Abraham's only relevant authority for this statement is § 360 of the Restatement (Second) of Torts, which provides:

A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

The Oklahoma Supreme Court has not adopted this provision. And in any event the record does not show a condition Trail Lanes could have discovered and made safe. In her First Amended Petition Abraham asserted

---

6. Although her First Amended Petition alleged that Lewallen entered the tavern and announced his intention to attack Decedent immediately be- fore the attack, the evidentiary materials in the record do not show that fact pattern.

Trail Lanes and the Mining Club were part of a joint enterprise, but the tavern lease does not contain any provision reflecting profit sharing or tying the monthly rental rate to income or other variable. Abraham has not presented evidence that Trail Lanes and The Mining Company had any relation other than landlord and tenant. The summary judgment record shows the criminal attack on Decedent was not foreseeable to Trail Lanes and therefore as a matter of law, Trail Lanes did not owe a duty to exercise care to warn or prevent the attack.

██ ¶ 13 We finally consider Abraham's claim that Trail Lanes was liable for maintaining a public nuisance.

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

Second. Offends decency; or

Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.

50 O.S.2011 § 1. Abraham has not shown Trail Lanes acted unlawfully and we have found no duty it failed to perform. Accordingly, Abraham's nuisance claim fails as a matter of law.

¶ 14 The summary judgment record shows Trail Lanes did not owe a duty to warn or prevent the harm suffered by Decedent in this case. Accordingly, Trail Lanes was entitled to judgment as a matter of law.

AFFIRMED.

JOPLIN, P.J., and HETHERINGTON, V.C.J., concur.